City of Westport v. Kansas City.

CITY OF WESTPORT, *Appellant*, v. KANSAS CITY.

DIVISION ONE.

1. **Municipal Corporation:** CHARTER: AMENDMENT OF. Where the charter of a city defines and fixes its boundaries, a subsequent change in the latter will constitute an amendment of such charter.

2. ———: ———: CONSTITUTION: KANSAS CITY. The constitution (art. 9, sec. 16) provides that a city having a population of one hundred thousand may frame a charter for its government which must be approved by four-sevenths of the qualified voters voting at

the election on its adoption, and that said charter when "so adopted may be amended by a proposal therefor made by the law-making authorities of such city published for at least thirty days * * * and accepted by three-fifths of the qualified voters of said city * * * and not otherwise." Kansas City adopted said charter, one of its provisions defining the territorial limits of the city. *Held* that an ordinance to extend such limits is an amendment of its charter and must be accepted by three-fifths of the voters as required by the constitution.

3. ———: ———: ———: ———. The provision contained in the same section of the constitution (art. 9, sec. 16), providing that "such charter shall always be * * * subject to the constitution and laws of the state," confers no power on the legislature to authorize amendments to the charter otherwise than as is provided in the constitution.

*Appeal from Jackson Circuit Court.*

REVERSED.

*C. O. Tichenor* for appellant.

(1) The ordinance in question is an amendment of the Kansas City charter. *Norris v. Mayor*, 1 Swan, 167; *Gray v. Crockett*, 30 Kan. 145; *Smith v. Sherry*, 30 Wis. 210; *City v. Harkinson*, 75 Ill. 156; *Morford v. Wiger*, 8 Ia. 82. (2) The constitution (art. 9, sec. 16) permits the charter to be amended by submitting a proposal therefor to the voters of Kansas City, and the matter not having been voted on by said voters the ordinance is invalid.

*R. L. Yeager* and *L. C. Slavens* for respondent.

(1) Section 16, article 9, of the constitution, authorizes any city of over one hundred thousand inhabitants, subject to certain regulations and restrictions, to frame its own charter. The last clause of that section is as follows: "Such charter, so adopted, may be amended by a proposal therefor, made by the law-making authorities of such city, published for at least

City of Westport v. Kansas City.

thirty days in three newspapers of largest circulation in such city, one of which shall be a newspaper printed in the German language, and accepted by three-fifths of the qualified voters of such city, voting at a general or special election, and not otherwise; but such charter shall always be in harmony with, and subject to, the constitution and laws of the state." If it be held that the extension of the city limits is an amendment of the charter, within the meaning of the above section of the constitution, then we submit that the clause of said section above quoted only means that the city, by itself, of its own motion, and independent of legislative author- ity, shall amend its charter only as therein provided. It does not mean that such city shall no longer be sub- ject to legislative control. It does not mean that the legislature shall never amend such charter, nor author- ize the city to amend it in a different manner; other- wise, the provision that the charter shall always be in harmony with, and subject to, the laws of the state, would mean nothing. *Ewing v. Hoblitzelle*, 85 Mo. 76, 77 and 78. ( 2 ) But we submit that the extension of the city limits is not an amendment of the charter within the meaning of the constitutional provision above quoted. If it is, then the act of the legislature of 1885, empowering cities of over one hundred thousand inhabitants to extend their limits, was a delegation of legislative power, and, therefore, void. But this court, in *Kelly v. Meeks*, 87 Mo. 396, held that it was not, and sustained the extension of its limits by this city, under that act. Moreover, the general law of the state governing villages ( R. S. 1889, sec. 1666 ) authorizes their incorporation by the county court upon petition of the inhabitants " setting forth the metes and bounds of their village and commons." The charter of such villages is that provided by the general law, article 6 of the Revised Statutes of 1889, entitled "villages." Of necessity the description of the village boundary is no

part of the charter. So, when the City of Kansas framed its present charter, under section 16, article 9, of this constitution, it need not have defined the boundaries of the city in the new charter. Such boundary, at the time, was not defined by the old charter. The city had by ordinance changed and extended the city limits, under the law of 1885, so that to ascertain its then limits, we must look, not at the old charter, but at the ordinance of the city whereby the limits were extended. The constitution gave the city, as its boundaries then existed, the power to make its own charter, and in so doing, it had no right to enlarge or diminish those boundaries. The declaration of the boundaries of the city in section 2, article 1, of the present city charter, has, therefore, no original force. It is merely declaratory. Those boundaries would have constituted the boundaries of the city, if the whole of section 2, article 1, had been omitted from the present charter. That section is, therefore, not an essential part of the charter. If it had been entirely omitted, could not the legislature have authorized the city to extend its limits, as it did in 1885? And since that section of the charter has no original force, but is merely declaratory, why has not the legislature the same power to authorize the city to so extend its limits as it would have had, if said section 2, article 1, of the present charter had been entirely omitted therefrom?

BLACK, J.—In form, this is an action of ejectment to recover possession of a market house, town hall and jail; but the real object of the suit is to test the validity of an ordinance of Kansas City, extending the limits thereof so as to include the city of Westport, which is a city of the fourth class.

Since May 8, 1889, Kansas City has been governed by a special charter, adopted by the voters thereof under the provisions of sections 16 and 17, of article 9, of

the constitution, and pursuant to an act of the legislature of the tenth of March, 1887, entitled, "An act providing that any city, having a population of more than one hundred thousand inhabitants, may frame a charter for its own government, and regulating the same." Acts, 1887, p. 42. The first section of the adopted charter changes the name of the city from the City of Kansas to Kansas City. The second section fixes and specifically defines the territorial boundaries of the city, and they are the same as those of the City of Kansas. The ordinance in question was passed and approved by the legislative department of Kansas City on the fourth of December, 1889, and it extends the limits of the city, as defined in the adopted charter, so as to add about twelve thousand, five hundred and eighty-five acres of land, including the city of Westport, which has a corporate territory of about two hundred and eighty-five acres. More than four-sevenths of the qualified voters of Westport voted for the proposed extension, but the proposition was never submitted to the voters of Kansas City for their approval or rejection.

Section 16, of article 9, of the constitution, provides that any city having a population of one hundred thousand inhabitants may frame a charter for its own government, by causing a board of freeholders to be elected, who shall prepare a draft of such charter to be submitted to the voters of such city, and, if approved by four-sevenths of the qualified voters, voting at the election, then it shall become the charter of such city and supersede any existing charter. "Such charter, so adopted, may be amended by a proposal therefor made by the law-making authorities of such city, published for at least thirty days * * * and accepted by three-fifths of the qualified voters of such city, * * * and not otherwise." The seventeenth section declares that it shall be a feature of all such charters that they shall

provide for two houses of legislation, one of which shall be elected by general ticket.

The act of the legislature of March 10, 1887, was designated to aid cities in organizing under the above sections of the constitution. The forty-first section of that act provides that "Any such city, after the taking effect of such charter, may at any time or times extend its limits by ordinance;" provided, that before such city shall extend its limits so as to include any incorporated city, town or village, four-sevenths of the qualified voters of the included city, town or village shall vote in favor of the proposition, and, if they do so vote, then the city making the extension "may proceed to extend its limits as provided in this section." This act, it will be seen, makes no provision for the approval of the proposed extension by the voters of the city making the same, and it seems to contemplate that the limits may be extended without such a vote.

From what has been said, it will be seen that we must determine these questions: *First*, whether the ordinance extending the limits of Kansas City is an amendment to the adopted charter; *second*, if it is an amendment, then whether Kansas City can, with or without legislative aid, amend its own charter without submitting the question to the qualified voters for their approval or rejection?

On the first question the argument of Kansas City is, in substance, this: That the constitution gave the city a right to adopt a charter for its own government; that, if nothing had been said in the new charter about boundaries, the territorial jurisdiction would have remained as before; that the section of the new charter defining the boundaries was unnecessary, not an essential, part of the charter, and should be disregarded. In looking through this adopted charter we find a vast number of sections which might have been omitted without affecting the charter taken as a whole. But it does

not follow that they are not parts thereof because they could have been omitted. So, too, the freeholders in framing the proposed charter, and the voters in adopting it, did, by the second section thereof, fix and define the territorial limits of the municipality, and that section is as much a part of the charter as any other section therein contained. This section, defining the limits of Kansas City, is made a part of the charter, and the question whether it might or might not have been omitted is foreign to the present inquiry.

In *Gray v. Crockett*, 30 Kansas, 138, Wyandotte City had been incorporated under territorial laws. The state constitution forbade the passage of any special act conferring corporate powers, and provided that provision should be made by general law for the organization of cities and towns. Subsequently, the legislature passed a special act excluding certain farming land from the limits of that city. The court, in holding this special act to be unconstitutional, said : "The boundaries of the city of Wyandotte are defined by its original act of incorporation, and any changes in those boundaries must necessarily contract or enlarge the sphere of its municipal jurisdiction, and, therefore, constitute so far an amendment of its charter."

It is too plain to admit of any doubt that any act on the part of Kansas City which contracts or expands its territorial jurisdiction is an amendment of its charter. Indeed, the ordinance in question seeks to make an amendment of grave importance ; for, if valid, Kansas City becomes liable for the debts of Westport, must furnish adequate police protection for the entire added territory, and is followed by a train of outlays too numerous to be mentioned. The conclusion cannot be escaped that the ordinance in question, extending the limits, is an amendment of the charter, and an amendment too within the purview of said section 16, of article 9, of the constitution.

With this conclusion the question remains, whether Kansas City can amend its own charter without submitting the proposed amendment to, and procuring the assent of three-fifths of, the qualified voters voting on the proposition.

That part of section 16, of article 9, of the constitution, before quoted, declares in plain terms that these adopted charters may be amended by a proposal therefor, made by the law-making authorities of such city and accepted by three-fifths of the qualified voters, voting at the election, and *not otherwise.* Thus it will be seen that the method by which the city itself can make the amendment is not only pointed out, but the city is denied the right to amend its own charter in any other way. If the constitution ended here it might be argued with much force that neither the city itself, nor the legislature, could amend this charter, save by and with the consent of the voters of such city ; but the same section of the constitution goes on to say : "But such charter shall always be in harmony with, and subject to, the constitution and laws of this state."

In view of this clause it is argued that these adopted charters are under legislative control and subject to the state legislative will. All this we have held on several occasions. *Ewing v. Hoblitzelle*, 85 Mo. 64 ; *State ex rel. Kansas City v. Field*, 99 Mo. 352.

But it is obvious that the state legislative will must be exercised in a manner which is consistent with the constitution. This act of the legislature which attempts to delegate the power to these cities to amend their own charters must not violate any provision of the constitution. If it does, it is void. Suppose the legislature should say to cities adopting charters for their own government : "It shall be enough that you have one house of legislation." Could such a law stand in the face of the constitutional assertion that there must be two houses of legislation ? Certainly not. Nor is it within the power of the legislature to dispense with a four-sevenths

vote in adopting such charters. So too the legislature cannot give to such cities the power to amend their own charters without submitting the proposed amendment to the qualified voters for their acceptance; for the plain language of the constitution is that such proposed amendment must have the assent of three-fifths of the voters voting upon the proposition.

It does not meet the question which we are bound to decide in this case to say that the charters of these cities are subject to legislative control. That the legislature may pass general laws which will operate as amendments to the adopted charters is conceded; but the question before us is, whether the legislature can grant such cities powers which the constitution says they shall not have. To say that the legislature may do such a thing is to say that the constitution furnishes its own means of destruction. It contains no such suicidal policy. When the constitution says these cities shall have the power to amend their own charters in one way only, the legislature cannot give to them the power to amend their charters in a different way. The prohibition is binding upon the legislature as well as upon the cities themselves.

We are cited to *Kelly v. Meeks*, 87 Mo. 396, in support of the proposition that Kansas City can extend its limits without consulting the qualified voters. When that controversy arose the City of Kansas was governed by a special charter enacted by the legislature in the year 1875. Under the legislative authority the city extended its limits by simply passing an ordinance to that effect, and the extension was upheld by this court. While as a general rule the legislature cannot delegate its legislative powers, still it is equally well settled that, in the absence of constitutional restrictions, the legislature may confer upon municipal corporations legislative powers, and it is on this principle of law that the case of *Kelly v. Meeks* stands, so far as it has any bearing upon the case in hand. But as has been said Kansas City is

now governed by a charter adopted under, and subject to, sections 16 and 17 of article 9 of the constitution, and said section 16 denies to the city the right to amend its own charter, save by consulting the voters, and as we have said the legislature cannot delegate to Kansas City the power to violate the constitution. *Kelly v. Meeks* has, therefore, no direct bearing upon the present case.

It also follows that the fact, that section 41 of the act of March 10, 1887, was carried into and constitutes a part of the adopted charter, does not aid the defendant.

Thus far, it has been conceded that the legislature may amend these adopted charters by laws which are general in their character; and it may be urged in opposition to what we have said, that by another clause of the constitution the legislature can pass no local or special law changing the charters of cities; that it will be impracticable, if not impossible, to frame a general law extending or contracting the boundaries of cities, except by delegating the power to the cities themselves to make the contraction or extension, and, if the power cannot be delegated to them, then there is but one way in which they can extend or contract their limits, and that is by submitting the proposal to, and procuring the assent of three-fifths of, the voters of the city, voting on the proposition. We need not discuss these propositions in detail. The answer to all of them is, if the foregoing provisions of the constitution bring about that result, then that ends the matter so far as the courts are concerned. We must, at all hazards, uphold and give effect to that instrument.

It is further insisted, on the part of Westport, that section 41 of the before-mentioned act of the legislature is void, because the subject-matter of that section is not clearly expressed in the title of the act; that the ordinance in question is unreasonable and, therefore, void, because fifty-eight per centum of the territory sought to be added to Kansas City has never been laid off into lots, and for all present purposes is but farming land;

and that the vote of Westport to become a part of Kansas City is void, because of irregularities in appointing the judges of that election. We shall not discuss or pass upon these various propositions; for the result, as to this case, will be the same however they are resolved.

This case has received that attention which its importance demands, and our conclusions are: That the constitution denies to the City of Kansas the right to extend its corporate limits, except by first submitting the proposition to, and procuring the consent of three-fifths of, the voters of that city, voting on the proposition; that section 41 of the act of the legislature of March 10, 1887, is void, in so far as it attempts to give cities adopting charters for their own government the power to extend their corporate limits without submitting the proposition to the voters of such cities; and that the ordinance in question, based upon the authority of that section of the act of 1887, is also void. It follows that the territory which the ordinance seeks to add to Kansas City is not within the limits of that city.

The judgment is, therefore, reversed, with directions to the circuit court to give judgment for plaintiff. All concur.