KANSAS CITY v. STEGMILLER et al., Appellants.

In Banc, June 30, 1899.

1. Kansas City: CHARTER AMENDMENT. Kansas City has authority under the Constitution to amend its freeholders' charter so as to take into the municipal corporation an adjoining city which has on its part complied with the law governing such extension.

2. ———: STATUTE: UNCONSTITUTIONAL IN PART: AMENDED. Where the Supreme Court declared that part of an act unconstitutional which permitted Kansas City to extend its boundary without a submission of the question to the people, and the legislature subsequently repeals such provision and enacts one in harmony with the Constitution, the whole act is not void on the theory that before it was amended there was nothing left to amend. The power of the legislature to repeal an unconstitutional provision of a law and amend it by a valid enactment is self-evident.

3. ———: CITIES: CLASSIFICATION. All cities authorized by the Constitution to frame and adopt their own charters constitute a constitutional class distinct from the four classes of cities chartered and classified by the legislature, and in legislating for this constitutional class the legislature neither infringes the Constitution nor creates a new class of cities.

4. ———: ———: ———: LOCAL AND SPECIAL LEGISLATION.  And no law enacted for the government of a city so organized, which bears upon its relation to the State government, if it be necessary to carry the Constitution into effect, is "local" or "special" within the meaning of the Constitution.  Such act is prospective in its purpose and applies to all cities which at any time may attain a population of 100,000 inhabitants.

5. ———: ———: ———: ———: NECESSARY LEGISLATION.  Such city can not absorb contiguous municipalities without the consent of the State, and it is competent for the General Assembly to provide for such absorption.

6. ———: EXTENDING LIMITS: VOID SECTION OF CHARTER.  The extension of the corporate limits of Kansas City to include Westport is not void because the city did not pursue a section of its charter which had been previously declared unconstitutional and void.

7. ———: ———: TIME OF TAKING EFFECT: ELECTION.  Unless otherwise provided by law, all amendments to a city charter take effect from the date of their approval.  So that where the statute provides that the corporate limits of a city of a certain class can not be extended so as to annex new territory "within four months next preceding a general election" in such city, and the extension is made on December 3, and a general city election is held on April 5, four months clearly intervened.

8. ———: ———: REGISTRATION OF VOTERS.  Nor was it necessary under the laws then in force that there be a registration of voters in either city prior to the submission of a proposition which sought to extend the corporate limits of one city so as to include the other.

9. ———: ———: ———: IN COUNTY.  The section of the Constitution providing for the registration of voters in counties of 100,-000 inhabitants, is not self-enforcing.

10. ———: ———: VALID.  The extension by Kansas City of its corporate limits in 1897, so as to include and embrace Westport, was done according to law, and is valid.

11. ———: ———: ———: COLLECTOR OF WESTPORT.  Kansas City, therefore, can maintain a suit against the former collector of Westport for moneys which he had collected and failed to turn over to Westport.

*Appeal from Jackson Circuit Court.*—Hon. Edward P. Gates, Judge.

Affirmed.

Teasdale, Ingraham & Cowherd for appellants.

(1) We do not deny that Kansas City can amend its charter in certain respects, nor that the extension of limits is an amendment, but we do deny that this particular kind of amendment (extension of limits) is authorized by the Constitution. 15 Am. and Eng. Ency. of Law (1 Ed.), 1010. (2) The extension of the limits of Kansas City (in question) can be justified from a constitutional standpoint only on two grounds: First, that the Constitution authorized such action as an amendment to the charter of said city. Second, that it was accomplished under a valid and constitutional act of the legislature (sec. 1880, R. S. 1889) as amended by the legislature (Acts of 1895, p. 54.) It can not be sustained as a charter amendment because: (a) It regulates the manner of submitting the question to the town of Westport, a city of the fourth class. (b) It also undertakes to regulate the election and other acts of said city. (c) It attempts to dissolve the legal existence of said city. (d) It results in the assumption of the debts and liabilities of said city. These matters could only be accomplished by the State acting in its sovereign capacity, through the legislature. In re Extension of Denver, 18 Colo. 288. And the extension can not be justified by section 1880 of the Revised Statutes as amended, as said act is unconstitutional for the following reasons: (a) It makes a distinction between cities of a certain population having charters, and those not having charters, although in the same class. Murnane v. St. Louis, 123 Mo. 479; St. Louis v. Dorr, 145 Mo. 466. (b) It would add another class to those already existing. Ward v. Boyd Paving Co., 79 Fed. Rep. 391; Bank v. Cheney, 94 Ill. 430. (c) It is an

attempted amendment of the charter of a city on a local subject, and obnoxious, therefore, to section 53, article IV, of the Constitution.    State ex rel. v. Scarritt, 127 Mo. 642.    (d) It applies to and operates only on charter cities, and charter cities existing at the time of the passage of the act.   State ex rel. v. Co. Court, 89 Mo. 237; Dunn v. Street Ry., 131 Mo. 5; Daugherty v. Austin, 94 Cal. 601; Denver v. Spokane Falls, 34 Pac. Rep. 936; Safe Deposit v. Frische, 152 Pa. St. 231.    (e)   As originally enacted, it was held unconstitutional (Westport v. Kansas City, 103 Mo. 141).    The only purpose of the original act was to permit an extension of the limits, by ordinance, without a vote of the people.    All other portions of the act were dependent and incidental, and consequently fell with the main purpose.    There was left nothing to amend.    Sutherland on Stat. Const. 174; Jones v. Jones, 104 N. Y. 234; Brooks v. Hydorn, 76 Mich. 273; Kelly v. Beemis, 64 Am. Dec. 51; Copeland v St. Joseph, 126 Mo. 417; Va. Coupon Cases, 114 U. S. 304; Darby v. Wilmington, 76 N. C. 133; Fant v. Gibbs, 54 Miss. 396; Warren v. Mayor, 2 Gray 84; Com. v. Hitchings, 5 Gray 482; Jones v. Robbins, 8 Gray 320; State ex rel. v. Commissioners, 5 Oh. St. 497; Rood v. McCarger, 49 Cal. 117; State v. Stark, 18 Fla. 255; Sparhawk v. Stark, 115 Mass. 315; McClosky v. State, 23 S. W. Rep. 518.    (3)   The extension was void for the reason that territory was thereby annexed to Kansas City within four months next preceding the general city election held in Kansas City. Sec. 1885, R. S. 1889; sec. 9, art. I, K. C. Charter; sec. 16; art. IX, Constitution; 1 Black, Com. 45; 1 Kent, Com. 458; Sutherland on Stat. Const., sec. 104.    (4) The extension was void because there was no valid registration of voters preceding the required election held in the two cities.    Sec. 5, art. VIII., Constitution; Ewing v. Hoblitzelle, 85 Mo. 72; Laws of 1895, Extra Session, p. 26; Laws of 1897, p. 111; Daggett v. Hudson, 43 Oh. 548; Owensboro v. Hickman, 90 Ky. 629; Stevens v. Mayor, 84 Ga. 630;

Mills v. Greene, 67 Fed. Rep. 818; Zella v. Chapman, 54
Mo. 502; State ex rel. v. Albin, 44 Mo. 346; State ex rel. v.
Frazier, 98 Mo. 426.    (5)    The extension was void because
the proposition submitted to Westport, and upon which the
voters acted, was to be included within the limits of Kansas
City.    Kansas City at the time of the proposed extension
enlarged the proposed limits, and thereby altered the proposi-
tion as submitted to the people of Westport. Paines' Law of
Election, sec. 247; Cushing v. Bedford, 125 Mass. 526; St.
Louis v. Epperson, 97 Mo. 300.    (6)    The extension was
void because it was unreasonable, in this, that it added thir-
teen and one-tenth square miles of territory, some of which
was vacant property.    Corrigan v. Gage, 68 Mo. 544; Cape
Girardeau v. Riley, 72 Mo. 224; Tarkio v. Cook, 120 Mo. 8;
Copeland v. St. Joseph, 126 Mo. 421; Kelly v. Meeks, 87
Mo. 401; State v. Dimond, 44 Neb. 154; Vestal v. Little
Rock, 54 Ark. 321; City v. Southgate, 15 B. Mon. 491.


     R. B. MIDDLEBROOK for respondent.


     (1)    No registration was necessary in Kansas City, Mis-
souri for the special election.    Session Acts 1897, p. 111.
(2)    Said enabling act of 1887, found now in acts of 1895,
page 55, is not unconstitutional, because the grant of power
having been given by the Constitution to large cities of the
character of Kansas City to amend their charters, such legis-
lation as the General Assembly may think necessary or
proper to carry into effect this constitutional grant, with
reference to these cities, is neither local nor special, as legis-
lation which is necessary or proper to carry into effect a pro-
vision of the Constitution, or which results directly or indi-
rectly from a specific constitutional grant of power, is not
local or special.    State v. Shields, 4 Mo. App. 250; State ex
rel. v. Tolle, 71 Mo. 645; State ex rel. v. Yancey, 123 Mo.
     VOL. 151 mo—13

391; Kenefick v. St. Louis, 127 Mo. 1; Spaulding v. Brady, 128 Mo. 653; Westport v. Kansas City, 103 Mo. 147.. See also State ex rel. Maggard v. Pond, 93 Mo. 631; Phillips v. Railroad, 86 Mo. 540; Dunne v. Street Ry., 131 Mo. 1; Humes v. Railroad, 82 Mo. 231. (3) Municipal ordinances are subject to review by judicial tribunals as to their reasonableness or unreasonableness, but nowhere is the doctrine announced, that the voice of the people, acting by authority of constitutional privilege and authority in making statutes by the initiative process, that is, by a direct vote, is subject to be passed upon before judicial tribunals for reasonableness or unreasonableness. Sutherland on Stat. Const., sec. 238. (4) No testimony appearing in the record that any voters were disfranchised or denied the opportunity of registering, and there being no question of the good faith and fairness of the election and no fraud claimed or charged, the court will not declare the election illegal for failure to register simply to illustrate a theory, no practical evil having resulted, and the proposition being to all intents and purposes simply a moot case. Weil v. Calhoun, 25 Fed. Rep. 871.

CLARENCE S. PALMER also for respondent.

(1) Kansas City is given power to amend its charter (sec. 16, art. IX. of the Constitution). The extension of the city limits is an amendment of the city charter. Westport v. Kansas City, 103 Mo. 141. The reason for giving St. Louis special authority to extend her limits (sec. 20, art. IX, Constitution) is apparent. The Constitution not only provided that St. Louis might make its own charter, but that it should have an exceptional organization, including county government, and making the city the agent of the State to collect and transmit its revenues. In addition to that it was the intention of the Constitution that St. Louis should at once proceed to organize as provided by the Constitution. Full authority to accomplish all that was desired was there-

fore given in the Constitution, instead of waiting two years until the next legislature should have met.  (2)  Our idea is that the extension of the limits of Kansas City depends for its validity upon both the Constitution and the statute.  So far as the action of Kansas City alone is concerned the authority of the Constitution is all-sufficient.  The Constitution, section 16, article IX, provides that the charter may be amended in the exact manner in which it was amended in this case, and this court having held, in Westport v. Kansas City, *supra,* that an extension of the limits is an amendment of the charter, disposes of that phase of the case.  It is probably necessary, however, in order that Kansas City may extend its jurisdiction to territory without its limits that it should have the authority of the legislature, and our contention is that such authority is amply given by section 1880 of the Revised Statutes of 1889, as amended in 1895.  A distinction must be made between this statute and a statute which attempts to change the powers of a city within territory included in its jurisdiction.  This is an enabling statute, providing the machinery by which the constitutional mandate may be carried out.  This law was first enacted in 1887 (Laws of 1887, p. 42) and this law was sustained in Kansas City v. Field, 99 Mo. 352; Westport v. Kansas City, 103 Mo. 141; Kansas City v. Marsh Oil Company, 140 Mo. 458.  It is perfectly proper in an enabling act to follow the classification of the Constitution.  And to hold that such a classification is not proper as a basis of legislation is, in effect, to construe the constitution as providing methods for setting aside its own commands.  Ewing v. Hoblitzelle, 85 Mo. 73.  The purpose of the enabling act is simply to provide the machinery necessary to give effect to sections 16 and 17, art. IX, of the Constitution.  (3)  No time for the taking effect of the amendment to the charter is expressly stated in the Constitution.  The amendment of the charter is of the same effect as a statute, and the general rule is that when no time is

provided the statute takes effect from the time of its enactment.     1 Kent's Comm., 458; Sutherland on Stat. Const., sec. 104.

GANTT, C. J.—Kansas City sued Joseph Stegmiller, formerly collector of the city of Westport, for moneys in his hands which he had collected and failed to turn over to the city of Westport, and procured judgment in the circuit court of Jackson county against him and his bondsmen.

One of the material allegations in the petition was that Kansas City had extended its corporate limits and absorbed the city of Westport, and had thereby become entitled under the law to collect from Stegmiller any money in his hands due the city of Westport.

The defendants in their answer admitted that Stegmiller was collector of Westport and that he had collected money due Westport and that he still owed the sum sued for to Westport.     He however, denied that he owed Kansas City any thing, and set up as a reason for not owing Kansas City that said city did not extend its corporate limits so as to include Westport in accordance with the laws of the State of Missouri governing such matters, and assigned nine different reasons why the attempted extension was null and void.     Among other reasons he alleged that section 1880 of the Revised Statutes of Missouri 1889, was void, said section being part of the law on which the extension was founded, as being in conflict with section 16 of Article IX of the Constitution of Missouri, and as being special legislation and otherwise unconstitutional.     Defendants further averred that Kansas City was without power under the Constitution or laws of the State to extend its limits at all.

In its reply the city traversed all the nine points raised in the answer.

The cause was tried in the circuit court of Jackson county, before Hon. E. P. Gates, one of the judges of the circuit court, and judgment was rendered for Kansas City.

After motions for new trial and in arrest had been heard and overruled, the defendants appealed to this court.

The proceedings in this case began March 6th, 1897, when a resolution was passed by the common council of Kansas City, directing that the Mayor of that city notify the mayor of Westport of Kansas City's intention to extend its limits so as to include, among other territory, Westport. Although this resolution of Kansas City was transmitted to the mayor of Westport by the mayor of Kansas City on March 10th, 1897, the mayor of Westport did nothing until August 23rd, 1897, when he issued his proclamation to the voters of Westport ordering a special election. Said special election was held in the city of Westport on September 28th, 1897, and a certificate embodying the result thereof was attested by the mayor of Westport and the city clerk thereof on October 4th, 1897. On the very same day that it was so attested and certified, the common council of Kansas City received it and filed it as part of the records of the city, and the mayor of Kansas City called the attention of the common council to the fact and officially recognized said communication from Westport's mayor.

As soon as Westport had thus signified in proper manner its intention of becoming a portion of Kansas City, as extended, the law making authorities of Kansas City proceeded to do their part, and on October 26th, 1897, the common council passed a proposal to the qualified voters of the city that the Kansas City charter be amended by extending the city limits, and defined the limits accurately according to the map forming a part of the record in this case. This proposal will be found in the record. Its language is couched in the exact terminology used in section 16, article IX, of the Constitution, and in strict conformity to section 43, article XVII, of the city charter. This proposal was not only recommended by the mayor, but was approved by him, as part of the law-making authorities of the city, the same as other ordinances

of the city are approved. Not only was this proposal passed, but at the same meeting, on October 26th, 1897, another ordinance was passed by the common council providing a form for submitting to the qualified voters of Kansas City the proposed amendment to the charter, describing the limits and defining the method of conducting the election, the form of ballot, etc. This ordinance will be found in the record. This ordinance was also approved by the mayor on the 27th of October, 1897. These two ordinances (the proposal and the ordinance prescribing the details of the election) were published together with the proclamation of the mayor of Kansas City calling a special election, for thirty days preceding December 2nd, 1897, in four newspapers of the largest circulation in Kansas City, the Star, the Journal and the World, all being English newspapers, and the German newspaper, the Kansas City Presse. The election was conducted without charge of unfairness or fraud and in accordance with the law as supervised by the election commissioners of Kansas City. The result of the election in Kansas City was 5,731 for the extension of the limits, and 323 against it. Result in Westport, 1,034 votes for and 164 against.

The election in Kansas City occurred on December 2nd, 1897. The next general city election was held April 5th, 1898. The next day after the Kansas City election (December 3rd, 1897), the officials of Westport turned over all the official documents and moneys and property belonging to Westport to the Kansas City comptroller, and voluntarily went out of office, and no municipal functions have been exercised by Westport from that time to this. The people of both cities acquiesced in the result.

The municipal government of Kansas City has adjusted itself to the new situation and has held one municipal election and one general election since the date of the annexation, to wit, December 2nd, 1897. Four new aldermen from the four new wards have taken their seats in the council.

Kansas City v. Stegmiller.

Four new aldermen at large have also taken their seats in the upper house. All have deliberated in its proceedings and have made laws for the city. The city assessment of taxes for 1898 was made and collected without protest. City taxes for 1899 have been levied and are payable the first of May, and will be collected commencing on that date. All licenses and other taxes have been voluntarily paid without protest by the people of the annexed territory and the territory that has been annexed is admittedly city property and has been such for many years, as will be seen by a perusal of the record. The reasonableness of the extension is not seriously contested. The people of Westport and of the adjacent territory are not complaining in any way and the validity of it has not been questioned, except in this proceeding. No direct proceedings by *quo warranto* or otherwise have been brought to test the validity of the extension.

I. With unfailing regularity the municipal affairs of Kansas City and Westport reappear at each recurring term of this court for solution.

This appeal challenges the right of Kansas City to extend its limits in any manner. Counsel asserts that neither in in the Constitution nor laws of the State can any authority for so doing be found.

It is scarcely necessary to state that Kansas City is now governed by a special freeholder's charter, adopted by the voters of said city in pursuance of the provisions of sections 16 and 17, article IX of the Constitution of Missouri.

Among the provisions of section 16 is this: "Such charter so adopted may be amended by a proposal therefor made by the law-making authorities of such city published for at least thirty days in three newspapers of largest circulation in such city, one of which shall be a newspaper printed in the German language, and accepted by three-fifths of the qualified voters of such city voting at a general or special election and not otherwise, but such charter shall always be

in harmony with and subject to the Constitution and laws of the State."

When confronted with this provision of our organic law as authority for the extension assailed in this case, learned counsel say they do not deny that Kansas City may amend its charter for some purposes, nor that an extension of corporate limits is an amendment, but they deny that this kind of amendment, to wit, an extension is authorized by the Constitution. But this attempted restriction is not to be found in the Constitution itself. The only limitation of the power of amendment is that it must be adopted by three-fifths of the qualified voters at a general or special election after the due publication of the proposal and that the charter as amended shall always be in harmony with and subject to the laws of the State.

In City of Westport v. Kansas City, 103 Mo. loc. cit. 147, it was unanimously ruled by this court in Division No. One that it was "too plain to admit of doubt that any act on the part of Kansas City which contracts or expands its territorial jurisdiction is an amendment of its charter" and "an amendment too within the purview or section 16, of article IX of the Constitution."

The amendment in that case was attempted by ordinance without the vote and assent of the voters of the city and for that reason alone was held ineffective. Both upon the authority of that case and the obvious reading of the Constitution we hold that in so far. as the action of Kansas City alone is concerned there is a plain constitutional grant of the power to extend its limits and a definite mode pointed out.

The argument based upon section 20 of article IX granting the city of St. Louis the right to .extend its limits so as to embrace the parks at that time beyond its boundary and other convenient and contiguous territory is foreign to the question. The specific rights accorded to St. Louis in no sense abridge the powers of cities that have or may avail themselves

of the right of amendment given by section 16 of article IX. Besides the authority conferred by that section on St. Louis was not the right of amendment but was a grant to embrace in the charter it was authorized to frame for the first time other territory not then within its boundaries.

Another and more serious question is presented in the next objection, that conceding Kansas City may amend its charter within its own limits still it has no power to legislate upon other cities without its boundaries and therefore no right to accomplish the dissolution of Westport. To this objection the counsel for Kansas City reply that the general law of the State as found in section 1880 of the Revised Statutes of Missouri 1889, as amended by the act of 1895, fully provides for the extension when the additional territory consists of another municipality.

It was pointed out in Westport v. Kansas City, 103 Mo. 141, that on the tenth of March, 1887, the General Assembly passed an Act entitled "An Act providing that any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, and regulating the same" (Acts 1887, p. 42), and that said act was designed to aid cities organizing under section 16 of article IX of the Constitution. The forty-first section of that act provided that "any such city after the taking effect of such charter, may at any time or times extend its limits by ordinance, provided that before such city shall extend its limits so as to include any incorporated city, town or village, four-sevenths of the qualified voters of the included city, town or village shall vote in favor of the proposition and if they do so vote then the city making the extension may proceed to extend its limits as provided in this section." That act as originally passed it will be observed, made no provision for the qualified voters of the city desiring to extend its limits to give their approval for the amendment of its

charter by a three-fifths vote.    That section was afterwards incorporated into the Revision of 1889, as section 1880.

It was held that as the city was denied the right to amend its own charter save as pointed out in the Constitution (section 16, article IX), so much of said act as gave the city the power to extend its limits by an ordinance without first submitting the proposition to and procuring the assent of three-fifths of the qualified voters of Kansas City was void.

Afterwards in 1895, said section 1880 (article I, chapter 31), Revised Statutes 1889, was amended by adding this provision: "Provided that if the city, the limits of which are to be extended, is organized under section 16 of article IX of the Constitution of this State, then the ordinance extending the limits shall, in all cases where the corporate limits are defined in the charter of such city, be in the form of a proposed amendment to the charter of such city, and before the same shall be of any force or effect, it shall be submitted to and accepted by three-fifths of the qualified voters of such city voting at a general or special election, in all respects and in compliance with all the requirements provided for amendments to the charter of such city." [Laws 1895, p. 54.]

Met with this amendment, providing a complete scheme by which the limits of a city with a freeholder's charter may extend its limits in exact conformity with the section of the Constitution which authorizes such a charter, defendants assert that the act of the Legislature is void because special, and because it creates another class of cities and is an attempt to amend the charter on a local subject in defiance of the Constitution, and having been declared unconstitutional before it was amended, there was nothing left to amend.

Let us meet these objections fairly.

It is true that, because the General Assembly makes a single provision in a law which is invalid because in conflict with the Constitution, so declared by the courts, it can not

amend that law by eliminating the unconstitutional provision and substituting one in harmony with the Constitution? Such a proposition answers itself. The power of the Legislature to repeal an unconstitutional provision of a law and amend it by a valid enactment is self-evident and needs no precedent to establish its soundness. This court did not declare the whole of section 1880 void, but expressly confined its decision to that portion which attempted to extend the limits by ordinance, instead of by amending its charter as required by the Constitution. The controlling purpose of the General Assembly was to provide a method for consolidating two or more adjoining cities, towns or villages and the mode of so doing was subordinate thereto.

This point is ruled against defendants.

It is next contended that the act creates a new class of cities contrary to section 7, article IX of the Constitution, which provides that the General Assembly shall provide by general laws for the organization and classification of cities and towns and that the number of such classes shall not exceed four, and the powers of each class shall be defined by general laws, and all cities of the same class shall possess the same powers and be subject to the same provisions.

It is further provided that the Legislature shall provide by general law whereby any city, town or village existing by virtue of any special or local law may elect to become subject to and be governed by the general laws relating to such corporations.

It is to be observed that the limitation of the number of classes to four applies only to those which the legislature is authorized to create.

On its face it is evident that the framers of the Constitution did not intend to destroy those cities then existing by special or local laws, but expressly gave them the option to continue under their special charters or to "elect to become subject to and be governed by the general laws relating to

such corporations." Accordingly it has been uniformly held by this court that the charters of these cities existing under laws passed prior to the Constitution of 1875, may be amended by general laws based on population applicable to those cities. Rutherford v. Heddens (1884) 82 Mo. 388; Rutherford v. Hamilton (1889) 97 Mo. 543; Kelley v. Meeks, (1885) 87 Mo. 396.

Again we think it is plain that the framers of the Constitution *ex vi termini* excluded from its legislative classification the city of St. Louis, which it expressly authorized to adopt its own scheme and charter, and all such cities as it authorized by section 16, article IX, to frame and adopt their own charters. These cities constitute two constitutional classes distinct from those chartered and classified by the legislature.

It follows that the legislature may legislate directly for these constitutional cities without infringing the Constitution, and in legislating therefor it does not create a new class but simply provides for a class created by the Constitution. Having expressly provided for these constitutional cities and having also provided in section 15 of the Schedule of the Constitution that "the General Assembly shall pass such laws as may be necessary to carry this Constitution into full effect," it has become a settled rule of decision in this court that no law can be either local or special within the meaning of the Constitution which has for its object and purpose the carrying out of the constitutional command. It was and is apparent that these exceptional cities were not to be left without necessary legislation to govern them in respect to their relations and obligations to the State at large. As to subjects which bear upon their relation to the State government the General Assembly can by a general law provide for their government. [Ewing v. Hoblitzelle (1884) 85 Mo. 64; Kenefick v. St. Louis (1895) 127 Mo. 1; State ex rel. v. Higgins (1894) 125 Mo. 364; State ex rel. v. Hughes (1891) 104 Mo. 459; Spaulding v. Brady, 128 Mo. 653.]

While therefore, Kansas City had the right under section 16, article IX, of the Constitution to frame its own charter within the domain of purely municipal government, subject to and in harmony with the Constitution and laws of the State, it was entirely competent and clearly within the power of the General Assembly to provide for its relation to other contiguous municipalities of the State and it could only absorb these outlying cities, towns or villages by the consent of the State which had created them.

The Legislature by section 1880, R. S. 1889, as amended by the Act of 1895 (Laws of 1895, page 55), provided a general law whereby cities of 10,000 inhabitants or less and having a special charter, and cities of more than one hundred thousand inhabitants organized under freeholders' charters by authority of section 16, article IX, of the Constitution, might extend their limits, and that whenever cities of either class desired to extend their limits so as to include any other city of any class whatever, the consent of four-sevenths of the qualified voters of the city to be included should favor the same, and provided that the city extending its limits should also vote in favor of such extension by a four-sevenths vote of its qualified voters, thus requiring cities like Kansas City to conform to the Constitution from which it derived its powers in effecting such consolidtion, and the other cities of 10,000 inhabitants or less to conform to the statute giving them the power, and in so doing violated no provision of the Constitution, but conformed strictly to it.

As to the other objection that the act was special because confined to those cities only which had over 100,000 at the time of the passage of the act, it is sufficient to say that as to this class of cities it is an exact copy of the Constitution itself. If this objection be good it applies as well to the Constitution itself, and section 16, article IX, became inoperative the moment it was adopted because it is a fact of which we take judicial cognizance that at that time St. Louis alone

of the cities of Missouri had a population of over 100,000 inhabitants, but no one so construes the Constitution. The language of section 16, article IX, is, "Any city having a population of more than one hundred thousand inhabitants may frame a charter," etc.

In State ex rel. v. Wofford, 121 Mo. 61, we ruled that a statute applicable to all cities of a certain population was a general law when it prescribed a rule for future government in all such cities as may in the course of time reach the requisite population, and is not restricted by its provisions to a state of facts then existing and not applicable to any other city which may in the future attain that population. This constitutional provision was designed for the future and permanent government of the State. It was prospective in its purpose and so was the act of 1887 and its amendment in 1895. Its provisions will apply to any other city when it attains 100,000 inhabitants as well as to Kansas City, nor is it at all improbable that contiguous to such large city may be villages, towns or small cities situated as Westport is to Kansas City.

We hold that the law of 1887 as amended by the act of 1895 is not a special or local law.

But again it is urged that this annexation of Westport is void because Kansas City did not pursue section 7, article I, of its own charter which provided for the extension by ordinance.

This court having held that section 7, of article I, of the charter was void, because it was in violation of the Constitution, that section no longer exists in contemplation of law.

In the language of counsel it was atrophied by the decision of Westport v. Kansas City, 103 Mo. 141.

After said section had been held void there still remained in the charter of Kansas City a provision known as section 43, article XVII, which provides, "This charter may be amended at any time by proposal therefor made by the law-

making authorities of the city, published for at least thirty days in three newspapers of the largest circulation in the city, one of which shall be a newspaper printed in the German language, and accepted by three-fifths of the qualified voters of the city voting at a general or special election. The city may by ordinance, subject to all laws, provide as to the form of submitting to such voters at any election any proposed amendment and for ascertaining the result of the election on such proposed amendment and making a proper record of the fact." This provision is in full compliance with the Constitution and utterly irreconcilable with the section 7, of article I of the charter condemned by this court as unconstitutional.

Another objection to the extension is that in violation of section 1885, R. S. 1889, territory was annexed to the city within four months next preceding the general city election held in Kansas City, held April 5th, 1898.

The facts are, as already stated, that the election, at which the proposed amendment was voted on, was held December 2nd, 1897. The next city election was held April 5, 1898. Four months had clearly intervened unless defendant's further contention that the amendment did not take effect for thirty days after its adoption, be true. But there is no such provision of the Constitution. Unless otherwise provided either by the Constitution or laws all laws and amendments take effect from the date of their approval. Endlich on Interpretation of Statutes, secs. 498 and 539.

It is also insisted that the elections for the extension were void because there was no valid registration prior thereto. The election in Kansas City was held on December 2, 1897. Prior thereto the General Assembly of this State at the regular session beginning on January 6th, 1897, amended the law requiring registration in cities of over 100,000 inhabitants so that section 40 of said act should read : "Section 40. At any special election occurring in a portion

of such city only, or which is to fill a vacancy occurring in a single office, or which is to submit propositions or amendments to a vote of the people there shall not be a previous revision of the registry." Laws 1897, p. 111. So that it is clear no law of the State required a new registration that year prior to this special election.

As to Westport there was no law requiring registration in a city of its size and the Legislature in 1895 (Laws 1895, p. 170) expressly provided that the so-called Australian ballot system should not apply to cities of the fourth class to which it is conceded Westport belonged prior to the extension. The argument that because Jackson county had over 100,000 inhabitants, the Legislature was required by section 5, article VIII, of the Constitution, to provide for the registration of voters therein, falls short of establishing that an election therein is void prior to a law providing for such registration. The Constitution is not self-enforcing on this topic. Moreover it is clear that Westport did not fall within the class of cities for which the Legislature was required to provide registration.

But the resources of defendants are not yet exhausted. They insist that the extension was void because the proposition submitted to Westport was, that Westport was to be included within Kansas City, whereas at the time of the proposed extension Kansas City took in other territory.

Joint Resolution No. 1319, directing the mayor of Kansas City to inform the mayor of Westport of Kansas City's intention to extend its limits, recited: "It is the desire of Kansas City by amendment to its charter to extend its corporate limits so as to include Westport and other adjacent territory." Westport could only vote her own consent to be included and this she did, but she had full notice that other territory was also to be annexed.

This point is somewhat attenuated. It was admitted that the description of the proposed boundaries of Kansas

City were clearly and intelligently set forth in the proposal to extend. The title to the ordinance was full and sufficient. The objection that it was unreasonable is clearly untenable. The property was nearly all improved and it was of the highest importance to the city for drainage and other police purposes. Considering the population of Kansas City and its rapid increase in population and wealth there is nothing in the charge that the extension was unreasonable. The present street car, cable and electric line system of Kansas City extends into the new territory and the manufacturing villages of Sheffield, Centropolis and Manchester are included in the extension. The sewer system of Kansas City is extended into the Blue River on the east, and Brush Creek on the south; these streams being the eastern and southern limits as represented by the extension.

Another point is made and that is, that the extension would increase the debt of Kansas City beyond the constitutional limit.

The assessed value of the property in the included territory is $6,341,090. The indebtedness of Westport was $120,000. The assessed valuation of Kansas City is $69,200,000, but there is no evidence of the indebtedness of the city, and hence there is no force in the point.

We have gone through all the points raised in this appeal because they were urged, and passed upon by Judge GATES, and it was just to him to hear the case on the theory on which it was tried before him and because in our opinion it is high time that the validity of the municipal acts and the status of Kansas City and Westport should be definitely settled.

But in strictness we do not concede that this is a proper proceeding to test this corporate action. Until questioned by *quo warranto* or other direct proceedings by the State, it is intolerable that every time a city sues on an account it must first establish its right to exist. As said by Judge DILLON in his work on Mun. Corp. (3 Ed.), sec. 899, "In all

VOL. 151 mo—14

matters in which the public alone are concerned, the law has wisely placed the control thereof in the hands of its officers chosen for that purpose; and public proceedings ought not to be used for the attainment of private ends."

We have reached the conclusion at which the learned circuit court arrived. Our labors have been shortened by the very clear memorandum filed by him when he gave his judgment.

We find no error and affirm the judgment. All concur, except SHERWOOD, J., absent.