The EMERSON ELECTRIC MANUFAC-
TURING COMPANY, a Corporation,
Plaintiff-Respondent,

North Hills Homesites et al., Plaintiffs-
Appellants,

v.

CITY OF FERGUSON, a Municipal Cor-
poration, Defendant-Appellant,

and

The Town of Normandy, a Municipal
Corporation, Intervenor-Appellant.

No. 48630.

Supreme Court of Missouri,

Division No. 2.

July 30, 1962.

Carleno & Nick, Ferguson, Wehrle &
Wehrle, Clayton, for appellant, City of Fer-
guson.

Bardgett, Gallagher & Hackmeyer and
John E. Bardgett, Clayton, for intervenor-
appellant, Town of Normandy.

William J. Costello and John C. Han-
negan, St. Louis, for appellants North Hills
Homesites and others.

R. H. McRoberts, T. V. Connelly, A. H.
Kerth, St. Louis, Bryan, Cave, McPheeters
& McRoberts, St. Louis, Kerth, Thies &
Schreiber, Clayton, of counsel, for plaintiff-
respondent, Emerson Electric Mfg. Co.

EAGER, Presiding Justice.

This proceeding consists of two con-
solidated causes, in each of which there was
an intervention by consent. The causes
were consolidated for trial by order of
court with the agreement of the parties. In
one cause Emerson Electric Manufacturing
Company sought a declaration that Ordi-
nance No. 116 of the City of Ferguson, pur-
porting to so extend its boundaries as to
annex the Emerson property, was void;
Emerson alleged that the attempted an-
nexation was unreasonable, oppressive, and
void on sundry stated grounds. It also
sought an injunction against the levying
and collecting of taxes from it under and

pursuant to said ordinance. In a second count it pleaded that Ferguson lacked authority to annex its property or exercise any control over it because of a prior proceeding instituted by the Town of Normandy, the intervenor. In a third count it asserted that its property was located in an incorporated area, to-wit, St. Louis County, which was organized as a charter county pursuant to Art. 6, § 18, Mo.Const., 1945, V.A.M.S., and that it was therefore exempt from Ferguson's annexation. A fourth count is wholly immaterial here. The other cause was a similar suit instituted as a class action against Ferguson by residents of North Hills Homesites. Ferguson had purported to annex that subdivision under a separate and subsequent Ordinance No. 214. That petition alleged that the purported annexation was "unreasonable, arbitrary, fraudulent, illegal and unconstitutional * * *." It specifically alleged the existence of prior proceedings to annex the same territory by the Town of Normandy, the priority of Normandy's proceedings, and the fact that North Hills was merely being used as part of a scheme of Ferguson to annex the plant of Emerson Electric and to make that annexation appear more reasonable. The annexation of North Hills by Ferguson was alleged to be unreasonable on sundry specific grounds. North Hills also attempted to raise the same supposed constitutional question mentioned above as constituting Emerson's third count.

The respective Intervening Petitions of the Town of Normandy set up its priority in right to the annexation of both the Emerson and North Hills properties (by factual allegations) and the consequent lack of all right and authority in Ferguson; it prayed a decree adjudging the Ferguson annexation, in each case, to be void, and for injunctions.

The trial court held sundry hearings, made extensive findings of fact and filed a memorandum opinion. It entered separate judgments. In the Emerson case it adjudged that the annexation by Ferguson was unreasonable and void, but held that Normandy had not acquired priority of jurisdiction. In so doing, its findings dealt in considerable detail with the nature, use and status of the Emerson property and with the specific reasons why such an annexation was neither necessary nor reasonable. It declared and adjudged that Ordinance No. 116 of Ferguson was "unreasonable, unjust, oppressive and, * * * void." It enjoined the enforcement of that ordinance, the exercise of jurisdiction thereunder, and also the "levying, assessing or collecting" of municipal taxes. In the North Hills case it declared that the annexing ordinance of Ferguson was reasonable and valid, making findings of various supporting facts. It again disallowed the claim of Normandy to any prior right or jurisdiction. Ferguson, North Hills and Normandy, after unsuccessful motions in the trial court, have appealed. Since the causes were consolidated below, they are here on a joint transcript.

█ While none of the parties initially questioned the jurisdiction of this court, we have entertained substantial doubt that we have jurisdiction. We questioned counsel at some length on this score during the oral argument, and have since invited and received written suggestions on the subject from counsel. It is hardly necessary to say that we have no right to determine the merits unless some ground of our jurisdiction is affirmatively established. Cotton v. Iowa Mutual Liability Insurance Co., 363 Mo. 400, 251 S.W.2d 246; Blair v. Hamilton, Mo., 292 S.W.2d 578.

We have determined that we do not have jurisdiction and that the consolidated cases must be transferred to the St. Louis Court of Appeals. In Emerson's Count III (repeated to some extent by North Hills) it raised the point that the area where its plant was located lay in St. Louis County, which had adopted a County Charter under Art. 6, § 18, Mo.Const.,1945, and that the area was therefore already incorporated into a municipal corporation and might not be annexed; thus, the purported annexa-

tion proceedings were alleged to be void as in conflict with said Art. 6, § 18. That constitutional question was determined adversely to Emerson's contention in City of Olivette v. Graeler, Mo., 338 S.W.2d 827, and, of course, it is now moot. In fact, it has not been briefed in this case.

Any remaining contention of jurisdiction here must rest upon the "amount in dispute." (Mo.Const., 1945, Art. 5, § 3.) We must recall that these suits are, primarily, actions to test the reasonableness of specific ordinances of *annexation* and to procure adjudications that the respective annexations are void. These are not suits filed primarily to invalidate any taxes. Incidentally and prospectively, the plaintiffs sought also to enjoin the levy and collection of those future taxes and license fees which would result from the annexation; and the trial court did so enjoin the collection of taxes in the Emerson case. The record does not show that any taxes have ever actually been assessed or levied against these properties, or that any of the properties involved have been placed on the tax rolls of Ferguson. Essentially, what the record does show is this: that the Emerson real estate and tangible personal property is carried by St. Louis County at a valuation of $2,981,300; that based upon this valuation and the Ferguson tax rate for the year 1959 the property taxes, real and personal, would have been $32,496.17; that, dependent upon the method adopted in assessing the tax, Emerson would have been subjected to a merchants' and manufacturers' license tax for the year ending September 30, 1958, of $22,544.80 or $34,062, with a slight increase for the next year. The record shows nothing with reference to any valuations or prospective taxes on North Hills where, of course, the ownership lay in many individuals. There was testimony from a real estate appraiser of unquestioned standing that, in his opinion, the value of the Emerson property would be decreased or depreciated in total value, if annexed, by a minimum of $750,000 to a maximum of slightly over one million dol-

lars, *dependent* upon the amount of taxes to be levied upon it. This witness explained that he had merely capitalized the prospective tax burden to be levied (a method which he said was generally used) and that he based his conclusions upon taxes alone, allowing three credits to be expected from a prospective annexation, namely, —the elimination of the county library tax, the present cost of garbage disposal, and the cost of an existing contract for supplemental fire services. He had not made any independent appraisal of the property.

The great majority of annexation cases which have been decided in this court have involved constitutional questions. City of Olivette v. Graeler, Mo., 338 S.W.2d 827; City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4; McConnell v. City of Kansas City, Mo., 282 S.W.2d 518; Hislop v. Joplin, 250 Mo. 588, 157 S.W. 625; State ex rel. Musser v. Birch, 186 Mo. 205, 85 S.W. 361; Copeland v. City of St. Joseph, 126 Mo. 417, 29 S.W. 281; State ex rel. Moody v. Wardell, 153 Mo. 319, 54 S.W. 574; Kansas City v. Stegmiller, 151 Mo. 189, 52 S.W. 723; City of Westport v. Kansas City, 103 Mo. 141, 15 S.W. 68; Nolting v. City of Overland, 354 Mo. 960, 192 S.W.2d 863; Powell v. City of Joplin, 335 Mo. 562, 73 S.W.2d 408. The cases of State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007, and State ex rel. Brown v. Town of Westport, 116 Mo. 582, 22 S.W. 888, were original quo warranto proceedings filed in this court. The recent case of Mayor, Councilmen & Citizens of City of Liberty v. Dealers Transport Co., Mo., 343 S.W.2d 40, came here on transfer from a Court of Appeals, as did the older case of State ex inf. Mallett ex rel. Wommack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393. Hixson v. Kansas City, 361 Mo. 1211, 239 S.W.2d 341, involved the effect of the prior quo warranto judgment of this court in the Taylor case, supra, —i. e., on the principle of res adjudicata. Jurisdiction once established would normally continue, in order to give effect to our judgment.

■ Generally, if a suit is not one for a money judgment the test of our jurisdiction is " 'the money value of the relief to the plaintiff, or of the loss to defendant, should the relief be granted, or vice versa, should the relief be denied.' " Superior Press Brick Co. v. City of St. Louis, Mo., 152 S. W.2d 178, loc. cit. 183. Bauer v. City of Berkeley, Mo., 278 S.W.2d 772; Koch v. Board of Regents of Northwest Missouri State College, Mo., 256 S.W.2d 785; Evens & Howard Fire Brick Co. v. St. Louis Smelting & Refining Co., 48 Mo.App. 634. But the value or amount must affirmatively appear from the record, and without requiring speculation. While the rule is applied more frequently in cases involving real estate than otherwise, the test of our jurisdiction is not what may be *affected* by the result of the case, but what is *directly involved* in the suit. Pursley v. Pursley, Mo., 213 S.W.2d 291, 292; Gary Realty Co. v. Kelly, 284 Mo. 418, 224 S.W. 410, 412; In re Jackson's Will, Mo.App., 291 S.W.2d 214, 218. In the latter case the court said: "But the test again is not the amount which may be *affected,* but the amount *actually involved* in the suit." We have accepted jurisdiction of various cases involving taxes where the validity or amount of a tax is the issue to be determined (i. e., it is *directly in issue*), such as: Mississippi River Fuel Corp. v. Smith, 350 Mo. 1, 164 S.W.2d 370, applicability of the sales tax law to natural gas sales in a direct suit seeking to declare the law inapplicable; May Dept. Stores Co. v. State Tax Commission, Mo., 308 S.W. 2d 748, direct review of the valuation of property by State Tax Commission; Anderson Air Activities, Inc. v. Division of Employment Security, Mo., 321 S.W.2d 710, judicial review of decision fixing contribution rate and directly involving a $34,348.-16 tax difference; Cooper v. School District of Kansas City, 362 Mo. 49, 239 S.W.2d 509, suit to enjoin extension of tax levy already voted. Cooper, supra, has been relied on by the parties here as establishing our jurisdiction. There the school board had fixed an additional school tax levy and the people had approved it at an election;

the remaining steps necessary to enforce the tax were merely ministerial, i. e., the certification of the vote and the extension of the tax on the books. Suit was filed by taxpayers to enjoin the taking of these steps on the ground that unqualified voters had voted in the election. Jurisdiction was retained on the ground that it appeared of record that if defendants were so enjoined, the district would sustain a loss of approximately $3,000,000. That, as will be noted, was a suit to enjoin the enforcement of an adopted tax levy, and it may reasonably be said that the tax was *directly in dispute;* its validity was the sole and primary issue.

■■ In these present suits the real issue is annexation,—yes or no,—not taxes. An annexation involves many things besides taxes. The levy and imposition of taxes would come merely as an incidental burden if and when the annexations are sustained. We must and do hold that the amounts of the prospective taxes here do not constitute an "amount in dispute" so as to give us jurisdiction. We have not overlooked the testimony concerning the supposed depreciation of the Emerson property in the event the annexation is consummated; but that witness based his opinion solely on the anticipated tax burden, as capitalized. It is no more effective, from a jurisdictional standpoint, to say that the imposition of taxes would cause a depreciation than to say that the taxes, specifically and of themselves, constitute an "amount in dispute." The depreciation of the property, where based solely on the prospective taxes, cannot be made a ground of jurisdiction if the taxes themselves would furnish no ground; it would constitute a mere secondary result. There are cases where the depreciation of property by reason of the enforcement of restrictions has been held to be a ground of jurisdiction (Cowherd Development Co. v. Littick, 361 Mo. 1001, 238 S.W.2d 346; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545; Andrews v. Metropolitan Bldg. Co., 349 Mo. 927, 163 S.W.2d 1024), but this is not such a case. In those

cases the validity of the restrictions themselves constituted the issue in dispute, and the restrictions and the depreciation were actually parts of the same thing, operating contemporaneously. The same is true of suits to enjoin a certain use of land, or a nuisance. Evens & Howard Fire Brick Co. v. St. Louis Smelting & Refining Co., 48 Mo.App. 634; Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 4 S.W.2d 776. In other words, the *sole issue* in those cases was the *right to use the property* in a certain way, and this, granted or denied, automatically established its greater or lesser value.

In most of the cases cited by respondent Emerson, it was clear that some monetary value was directly in issue, and the question was its amount; Evens & Howard Fire Brick Co. v. St. Louis Smelting & Refining Co., 48 Mo.App. 634; Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S.W. 391, 56 L.R.A. 951, 90 Am.St. Rep. 440; Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 4 S.W.2d 776. Here there is little or no question about the "value" of the taxes. The principal difficulty is that the taxes are not *directly in dispute*. In so far as we have found, this precise question has not previously been decided. Counsel cite the case of Schildnecht v. City of Joplin, 327 Mo. 126, 35 S.W.2d 35, as applicable in principle. The court there held that the mere assumption of municipal jurisdiction over a territory did not give this court jurisdiction, or "signify a dispute over a monetary amount exceeding $7,500." If the case could possibly be construed as indicating that prospective taxes in that amount (though not so stated) would give us jurisdiction, such a holding would be dicta, at best. The same may be said of: Ward v. Consolidated School District No. 136 of Nodaway County, 320 Mo. 385, 7 S.W.2d 689, in which (a suit to enjoin a school bond election) some reference was made to the possible taxes which plaintiffs might save; and Koch v. Board of Regents of Northwest Missouri State College, Mo., 256 S.W.2d 785, where

the only issue was the validity of a building contract, and a somewhat similar reference was made.

It may be significant to note that in annexation cases there is no power or authority to levy or assess taxes until the annexation becomes final. In those cases subject to the Sawyers Act, § 71.015, this can only come after a declaratory judgment is obtained, and the steps "otherwise authorized by law or charter" are performed. City of Olivette v. Graeler, Mo., 338 S.W. 2d 827, 833. In an annexation by a charter city the proceeding is not completed until submitted to and approved by a vote of the people. In both of the present proceedings, injunction suits were filed before the city would, presumably, have had any opportunity to assess and put the property on its books after the respective elections (one within five months and one within one month).

An annexation proceeding is not an ordinary suit between specific persons, individual or corporate. The citizens of the annexing city or town have an interest in its expansion, and the people whose property is to be annexed also have an interest, even though only certain ones appear and protest. In seeking to determine whether a specific monetary amount remains in dispute, independent of all contingencies (Snowbarger v. M.F.A. Central Cooperative, Banc, Mo., 317 S.W.2d 390, 393), we would be forced to balance all possible prospective benefits against the prospective burdens. This would obviously involve much speculation. It is true that Emerson denies that it would receive any benefits here except three items totalling some $6,-656.34; but we cannot say, with the certainty required in an assertion of jurisdiction, that its property will not be benefited in other respects, tangible or intangible. North Hills has apparently already received direct and substantial benefits, but our real question of jurisdiction lies in the Emerson case, for North Hills has made no independent attempt to establish jurisdiction here. We

doubt seriously that any annexation case is susceptible of being reduced to a monetary "amount in dispute" so as to make our jurisdiction appear affirmatively and without speculation.

We hold that a value exceeding $15,000 is not affirmatively shown to be directly in dispute here, and that we do not have jurisdiction. We have read all of the five-volume record in this case, largely to ascertain whether any ground of jurisdiction appeared. The consolidated cases will be transferred to the St. Louis Court of Appeals.

All of the Judges concur.