250 P.2d 79

EMPLOYMENT SECURITY COMMISSION
v. LUMBER DISTRIBUTORS, Inc.

No. 5430.

Supreme Court of Arizona.

Nov. 12, 1952.

D. Kelly Turner, of Phoenix, Delmore S. Wood, Phoenix, of counsel, for appellant.

Knapp, Boyle, Bilby & Thompson, and Arthur Henderson, all of Tucson, for appellee.

DE CONCINI, Justice.

·This action was brought to enforce provisions of the Employment Security Act, Chapter 56, A.C.A.1939, hereinafter referred to as the Act. All references to "Chapter 56" apply to 1939 Arizona Code Annotated, 1952 Supplement. The ultimate question to be decided is what rate applies, the 2.7% or 1.5%?

The Employment Security Commission, hereinafter referred to as the Commission, brought an action against the appellee Lumber Distributors, Inc., hereinafter referred to as the "corporation", for the difference between the amount of premiums the corporation paid in pay-roll taxes to the Commission on wages paid in its business during the first quarter of 1950 and the amount the Commission claimed was due it. The appeal hinges entirely upon the tax rate applicable to the corporation. The contention of the Commission is that the corporation owed contributions at the rate of 2.7% for the calendar year 1950. The corporation on the other hand contends that their tax rate was 1.5% of wages paid commencing January 1, 1950. The corporation paid upon the basis of the latter rate. The Commission brought suit for $313.28, being the difference.

Appellee corporation commenced business May 18, 1946 with five to ten employees regularly employed. The corporation became an employer subject to the Act the first week in October as a result of having,

"* * * for some portion of a day, * * * in each of twenty (20) different calendar weeks, * * * in

employment, three (3) or more individuals * * *." Sec. 56–1002g(a). Under Section 56–1007 the corporation then became liable for contributions to the Commission on wages paid its employees from May 18, 1946.

The corporation made contributions on its payroll at the rate of 2.7% under Section 56–1007a(b). At the beginning of its fourth calendar year, January 1, 1950, it contended it had become eligible for a reduced rate under Section 56–1007b(d):

"(d) No employer's rate shall be reduced below the standard rate for any calendar year unless and *until his account has been chargeable with benefits* throughout the 36-consecutive-calendar-month period ending on June 30, of the preceding calendar year; * * *." (Emphasis supplied.)

After the 36 calendar-month period the employer's rate is subject to reduction if its account warrants it. In order to qualify for a reduction the status of its account is considered as of July 1 of the preceding calendar year. Section 56–1007b(e):

"* * * Each employer's rate for any calendar year shall be determined on the basis of his record as of July 1, of the preceding calendar year. * *"

The new rate after the 36-month experience-period is determined by Section 56–1007d, which, prior to the 1951 amendment and applicable to this case, provided as follows:

"(a) If the total of all an employer's contributions paid on or before July 31, of the preceding calendar year with respect to wages paid by him prior to the first day of July of such preceding calendar year, *exceeds the total benefits which were chargeable to his account* and were paid on or before July 31, with respect to weeks of unemployment beginning prior to such first day of July, his contribution rate for the ensuing calendar year, * * * shall be: (emphasis supplied)

* * * * * *

"(3) One and one-half per centum (1.5%) if such excess equals or exceeds seven (7) but is less than nine per centum (9%) of his average annual payroll." Ch. 75, Laws 1947.

During the 36 consecutive calendar-month period prior to July 1, 1949, the corporation's (unemployment mortality) experience was such that it qualified for a reduction from 2.7% to 1.5% as provided in subparagraph (3), supra. However, the Commission contends the words *"exceeds the total benefits which were chargeable to his account"* in Section 56–1007d(a), supra, and the words "until his account has been chargeable with benefits", Section 56–1007b (d), supra, mean that the charges must have been made or were capable of being made prior to July 1, 1946.

It is also to be recalled that, while the corporation started its employment May 18, 1946, its account was not set up until Octo-

ber 1, 1946, when it changed its status from an "employing unit" to an "employer" subject to the Act. Section 56–1002g(a) provides an employer is one who has three or more employees for twenty weeks in a year. The corporation qualified on October 1, 1946.

The corporation contends that the 36-month rating-period commenced on or before July 1, 1946, and was completed July 1, 1949, which would entitle it to a reduced rate on the first day of the following calendar year, viz.: January 1, 1950.

The Commission contends that the 36-month period commenced after July 1, 1946, and therefore the 36-month period would have to be measured from July 1, 1947, which would complete the cycle on July 1, 1950. Hence the corporation would be entitled to a reduced rate on January 1, 1951, and not on January 1, 1950.

In order to determine whether an employer's account is "chargeable with benefits", it is necessary to examine a claimant's base period. A claimant is one of the corporation's employees who was laid off from his employment. Section 56–1002 "Base Period" means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year. The Commission contends, and rightly so, that any employee of the corporation would not have been eligible for benefits from his employer's account if he became unemployed during the period of May 18 to July 1, 1946, being the second quarter of that year, nor during the third quarter of that year because neither of those periods would be in the claimant's base period.

The corporation's contention is that such reasoning erroneously assumes that all of its employees "spring into being, full blown, like Minerva from the forehead of Jove" and none of them came from one employment to another. The corporation on the other hand assumes that such an employee claiming a benefit during the second or third quarters of 1946, has an employee's base period which included employment with other "employers".

The corporation argues that under Section 56–1007(a), which provides in part:

"Contributions shall accrue and become payable by each employer for each calendar year * * *", Ch. 75, Laws 1947.

and Section 56–1007b(b), which provides:

"Except as otherwise provided in article 10, chapter 56, Arizona Code of 1939, benefits paid to an individual shall be charged against the accounts of his base period employers. The amount of benefits so chargeable against each such base period employer's account shall bear the same ratio to the total benefits paid to an individual as the base period wages paid to the individual by such employer bear to the total amount of base period wages paid to the individual by all his base period employers",

the corporation would, therefore, be "chargeable with the benefits paid such employee."

We cannot follow the logic of that argument and we disagree with that conclusion, because none of the corporation's employees (i. e. claimants) who might have made a claim for unemployment benefits during the second or third quarter of 1946 could possibly have received wages from the corporation during his base period as hereinbefore set out.

■ However, while the corporation did not argue the following proposition in its brief, we deem it necessary to treat it. Supposing a claimant, a discharged employee of the corporation, would at some subsequent period to October 1, 1946, apply for benefits so that the second and third quarters of 1946 would fall in the claimant's base period; then that would permit benefits to be charged to the corporation's account for those calendar quarters in the claimant's base period.

Then the question arises: does the charging of the corporation's account for the second quarter of 1946, for benefits paid to a claimant after Octotber 1, 1946, at which date the corporation became an employer subject to the Act, result in allowing the corporation the benefit of the reduction in tax rate because of its unemployment mortality experience in the 36-month period between July 1, 1946 and July 1, 1949?

The answer is "No". The reason is obvious because no charge was, or could be made against the employer's account prior to July 1, 1946, but could only be made after October 1, 1946. Therefore, the 36-month experience period could not begin until July 1, 1947, and would end on July 1, 1950, which would allow the reduced rate to go into effect on January 1, 1951.

■ The corporation further contends that it is considered an "employer" during the whole of 1946 and therefore it was chargeable with benefits before July 1, 1946.

Section 56–1008(a) provides:

"Except as provided in subsection (c) of this section, any employing unit which is or becomes an employer subject to this act within any calendar year shall be deemed to be an employer during the whole of such calendar year."

This simply means that once an "employing unit" becomes an "employer", such as the corporation did in October, 1946, then it is deemed to be an "employer" for that calendar year and is subject to tax during that year. The fact that it becomes an employer doesn't change the date on which its account is "chargeable with benefits". Certainly an "employing unit" which never becomes an "employer" under the terms of the Act will not be deemed such until it first acquires the status of an "employer".

We realize this is a harsh decision. It seems unfair to charge an employer with payroll taxes on October 1, 1946, and make

those charges retroactive to May 18, 1946, without allowing the employer to start his 36-month experience-period on July 1, 1946. However much we disagree with the law in principle—yet we find it our duty to interpret it in relation to what it says and what the apparent intent of the legislature was.

We believe the trial court erred in its judgment allowing the corporation a rate of 1.5% for the year 1950 in payment of its contributions under the Act.

Judgment reversed.

UDALL, C. J., and STANFORD, PHELPS, and LA PRADE, JJ., concurring.