**ANDERSON AIR ACTIVITIES, INCORPORATED, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY of the State of Missouri and Industrial Commission of the State of Missouri, Respondents.**

No. 46026.

Supreme Court of Missouri,

Division No. 2.

March 9, 1959.

Riddle & Baker, Veryl L. Riddle, Charles H. Baker, Malden, John W. Noble, Kennett, for appellant.

George Schwartz, Jefferson City, for respondent Division of Employment Security.

Lloyd G. Poole, Jefferson City, for respondent Industrial Commission.

LEEDY, Judge.

■ Anderson Air Activities, Inc., appeals from an adverse judgment in this action brought by it in the Circuit Court of Cole County for judicial review of a decision of the Industrial Commission of Missouri, which decision fixed employer-appellant's contribution rate to the unemployment compensation fund for the calendar year 1955 at 2.7% of its payroll. The amount in dispute is the value of the relief sought, which is agreed to be $34,348.16. This sum represents the difference between the employer's contributions for the period in question computed at 2.7%, as fixed by the commission, and the rate appellant claims was applicable, to-wit, 1.0%. Jurisdiction is, therefore, in this court.

Relevant facts were stipulated as follows: The employer is a Wisconsin corporation licensed to do business in Missouri. It operates the Malden (Mo.) Air Base as prime contractor of the United States Government. "Employer's first employment in Missouri occurred in June, 1951. During June, 1951, and each month thereafter to the present date the employer has been subject to the Missouri Employment Security Law. The employer began paying taxable wages for employment in the third calendar quarter of 1951 [July 1–Sept. 30], and it has paid such wages with respect to each calendar quarter since then. * * * On December 15, 1954, the Division of Employment Security determined that the employer was ineligible for a rate calculation for the calendar year 1955, and fixed its contribution rate for 1955 at 2.7%. Employer's experience was such that had it been determined eligible for a rate calculation the contribution rate would have been 1.0%."

The statute upon which eligibility for experience rating is to be determined (the italicized portion of which gives rise to the present controversy) is Section 288.090, subd. 2, reading as follows (all statutory references are to RSMo 1957 Supplement and V.A.M.S.):

288.090, subd. 2. "Each employer shall pay contributions equal to two and seven-tenths per centum of wages paid by him during each calendar year *unless there shall have been thirty-six consecutive calendar months immediately preceding the July first calculation date for such calendar year throughout which his account could have been charged with benefits.* The division shall classify all employers meeting this requirement for each calendar year in accordance with their actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their accounts, with a view to fixing such contribution rates as will reflect such experience. The division shall determine the contribution rate of each such employer in accordance with section 288.120."

Section 288.120, just referred to, provides, in subsection 1(1), "Each employer's rate for the twelve months commencing January first of any calendar year shall be determined on the basis of his record through the preceding June thirtieth." It also prescribes the rates, and how the same are calculated. (This section, as well as certain others hereinafter mentioned, was amended by Laws 1957, p. 531, but, of course, the instant case is governed by the statutes in effect at the time the employer's rate of contributions for the year was fixed.)

Other provisions of the Employment Security Law which are pertinent follow:

288.030, subd. 2. "*'Base period'* means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year, * * *."

288.030, subd. 3. "*'Benefits'* means the money payments payable to an insured worker, as provided in this law, with respect to his unemployment."

288.030, subd. 4. "*'Benefit year'* means the one year period beginning with the first day of the first week with respect to which an insured worker first files an initial claim for determination of his insured status, * * *."

288.030, subd. 5. "*'Calendar quarter'* means the period of three consecutive calendar months ending on March 31, June 30, September 30 or December 31."

288.030, subd. 8. "*'Contributions'* means the money payments to the unemployment compensation fund required by this law, exclusive of interest and penalties."

288.100, subd. 1(1). "The division shall maintain a separate account for each employer, and shall credit his account with all contributions which he has paid. * * Benefits paid to an eligible individual shall be charged against the accounts of his base period employers in inverse chronological order to the order in which the employment of such individual occurred, commencing with his last base period employer. * * * The charges shall be made inversely by calendar quarters and the total charges with respect to any individual claimant against all employers in any calendar quarter shall not exceed two hundred dollars. * * *."

Of course, Section 288.120 does not come into play until the requirements of Section 288.090, subd. 2 have been met. We consider, then, the language of the latter section we have italicized above— "* * * unless there shall have been thirty-six consecutive calendar months immediately preceding the July first calculation date for such calendar year throughout which his account could have been charged with benefits." Appellant contends such language means thirty-six months of consecutive employment—in other words, thirty-six months of contribution liability.

This construction is too narrow. What is meant is unemployment experience, and the latter arises under this statute only when an employer's account is chargeable with benefits. When was appellant's account first chargeable with benefits? Bearing in mind the statutory definition of "base period" and the provisions of Section 288.100 under which benefits are to be charged to the account of the most recent employer within the base period of an individual, it is readily apparent that appellant's account was not chargeable with benefits at any time during 1951. For our purpose, this example will suffice: Assume that a claimant's "benefit year" commenced December 31, 1951. In such event the claimant's base period (the first four of the last five completed calendar quarters immediately preceding the first day of the individual's "benefit year") would have been comprised of the last two calendar quarters of 1950 and the first two calendar quarters of 1951, thus entirely excluding any portion of the two remaining calendar quarters of 1951, during which latter quarters appellant, for the first time, became liable for and paid contributions. Consequently, the earliest period at which appellant's account could have been chargeable with benefits was during the firrst calendar quarter of 1952, hence the employer did not have the requisite unemployment experience specified in Section 288.090, subd. 2 so as to be entitled to an experience rating, or reduction of its contribution rate for the calendar year of 1955. We are fortified in this view by similar conclusions of the highest courts of other states under comparable statutes (Employment Security Commission v. Lumber Distributors, 74 Ariz. 388, 250 P.2d 79; First Nat'l Bank of Miami v. Florida Industrial Commission, 154 Fla. 74, 16 So.2d 636) and an exceedingly persuasive article by authors experienced in this particular field. See Experience Rating, Vol. 8 (1954–1955) Vanderbilt Law Review 376, 390–391. No authority holding to the contrary has been cited, nor have we been able to find one. The view we have taken of the statute renders it unnecessary to discuss other arguments advanced by appellant, and results in affirmance of the judgment. Ordered accordingly.

All concur.