**CITY OF HANNIBAL, a municipal corporation, Appellant,**

v.

**Ben N. WINCHESTER and Ruth Winchester, his wife, et al., Respondents.**

No. 50068.

Supreme Court of Missouri,

In Banc.

June 14, 1965.

Dennis R. Davidson, City Counselor, Ely & Hibbard, Ben Ely, Hannibal, for appellant.

William B. Spaun, Hannibal, for respondents.

EAGER, Judge.

This case involves the validity of proceedings by the City of Hannibal, a charter city, to annex territory. A petition for declaratory judgment under the Sawyers Act, Section 71.015, RSMo 1959, V.A.M.S.,[1] was filed as a class suit against the interested owners in the adjacent territory. No objection is made here to the use of a class action. The petition contains the allegations appropriate to a Sawyers Act case, namely, that the proposed annexation was reasonable and necessary to the proper development of the city, that the city had the ability to furnish normal municipal services to the area within a reasonable time, and other factual statements deemed pertinent. The City Council had adopted appropriate resolutions concerning the annexation, including one eliminating from the suit a part of the area originally proposed for annexation, because of an agreement with certain property owners resulting in a partial annexation. Defendants filed their motion to dismiss the second amended petition on the following grounds, among others: that the said petition stated no cause of action; that the court did not have jurisdiction of the subject matter or the parties; that § 71.015 does not apply to constitutional charter cities and that the statute is unconstitutional as so applied, because it is in conflict with Art. 6, §§ 19 and 20 of the Missouri Constitution, V.A.M.S.; that plaintiff must proceed under Section 82.090, RSMo 1959, V.A.M.S., because its corporate limits were defined and set out in its charter, and that the present proceedings are repugnant to that statute; that the boundaries of plaintiff can only be extended by charter amendment, and that the present proceedings would deprive defendants of their property without due process. The Honorable James D. Clemens was assigned to hear the case, in lieu of the regular judge. The Court sustained the motion and dismissed the petition with prejudice for lack of jurisdiction of the subject matter; it relied upon the cases of McConnell v. City of Kansas City, Mo., 282 S.W.2d 518, and State ex inf. Taylor ex rel. Kansas City v. North Kansas

---

1. All statutory references will be to that revision unless stated otherwise.

City, 360 Mo. 374, 228 S.W.2d 762. This appeal followed immediately.

In effect, the trial court held that a constitutional charter city may only annex territory or alter its corporate limits by a charter amendment as provided in § 20 of Art. 6 of our Constitution which it regarded as a self-enforcing provision, and that the Sawyers Act was inapplicable and, indeed, invalid as to constitutional charter cities. Section 19 of Art. 6 permits any city of more than 10,000 inhabitants to frame and adopt a charter for its government "consistent with and subject to the constitution and laws of the state * *"; it provides very specifically the method for doing so, requiring a vote of the electors. Section 20 of Art. 6 provides the method for the amendment of any such city charter; the basic requirement of that section is the vote of a majority of the electors which shall follow the adoption of an ordinance proposing the amendment, the submission of the proposal by a commission, or the presentation of a petition of at least 10% of the qualified electors.

The points upon which appellant city relies here are substantially these: that the charter of the City of Hannibal expressly provides that it may extend its corporate limits by ordinance "pursuant to the applicable laws," and that it was within the powers of the Charter Commission and the voters, under the Constitution and legislative acts, to insert that provision in the charter; that this is a matter germane to the government of the city; that on such matters affecting the "form of organization" of a city, the Constitution has granted to the Charter Commission and the electors full legislative power coordinate with that of the legislature; that the provision of a "workable method" for annexation is vital, not only to cities but also to the interest of the inhabitants of the territory to be annexed and to the state; and, finally, that under the charter provisions of plaintiff the Sawyers Act is applicable and a declaratory judgment suit proper.

Our Court has held rather recently on two different occasions that the exclusive method by which Kansas City may annex territory is by a charter amendment. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, Banc, 360 Mo. 374, 228 S.W. 2d 762; McConnell v. City of Kansas City, Mo., 282 S.W.2d 518. In Taylor, the primary question was which of two municipalities had first instituted valid annexation proceedings. It was held that the enactment of an ordinance by Kansas City providing for the annexation by means of a charter amendment under § 20, Art. 6, gave that municipality priority, and that its proceedings by that method were not only proper but exclusive; also that the provisions of § 20 are broad enough to include annexation proceedings even though they are not expressly mentioned as such. After discussing prior cases, the Court said: "Sec. 20 of Article VI of the 1945 Constitution is likewise self-enforcing. That section supplies a rule for the enjoyment of the right granted; it descends to details and provides that amendments to city charters may be proposed by the city legislative body by ordinance and submitted to the city's electors at a certain election; that if approved by a majority voting thereon the amendment shall become a part of the charter at the time and under the conditions therein fixed. State ex rel. Randolph County v. Walden, 357 Mo. 167, 206 S.W.2d 979. * * * As above ruled, relator has authority to amend its charter. An extension of relator's corporate limits must be by and is an amendment of its charter. * * * Whatever may be the rule in any other jurisdiction, or however any court in some other jurisdiction may have construed some other constitution, we hold that under the Constitution of Missouri relator has a constitutional grant of power and authority to extend its city limits by amendment of its charter in compliance with Sec. 20 of Article VI of the Missouri Constitution of 1945. Specific legislative authority to extend relator's limits is unnecessary. It was legally sufficient for adoption that a majority of the qualified electors voting

thereon approved relator's proposal to amend its charter to extend its boundaries. The approval by a majority met constitutional requirements." The Charter of Kansas City expressly provided that annexation should be accomplished by charter amendment. That is urged here as a vital distinction.

In McConnell v. City of Kansas City, Mo., 282 S.W.2d 518, a taxpayer sought to enjoin the submission of an annexation ordinance to the voters as a charter amendment, on the ground that the city must proceed by declaratory judgment under the Sawyers Act. The Court held that the statute was inapplicable because it was in conflict with the provisions of § 20 of Art. 6 regulating the time of the submission of an annexation proposal to the voters as a charter amendment. The Court said there in part, loc. cit. 520, 521, 522: "Art. VI, § 20, of the Constitution (all references to the constitution are to Mo.Const.1945, V.A. M.S., unless otherwise indicated), applicable to Kansas City, is a self-enforcing provision conferring the power, and providing the procedure for, constitutional charter cities to amend their charters; and an extension of a city's corporate limits is a charter amendment within the purview of Art. VI, § 20. State ex Inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, 769–771. * * * It seems clear that the people of the state have 'authorized' constitutional charter cities, through their electors, to annex territory by a direct constitutional grant of power to do so. * * * It must be apparent, then, that the Sawyer[s] Act, which postpones the submission to the electors of an annexation proposal until a declaratory judgment action shall have been filed (and, incidentally, the time for filing such action is not specified) and *finally* determined, conflicts with the procedure provided by Art. VI, § 20, of the Constitution and, therefore, that the Act is invalid as to charter cities to which Section 20 is applicable. This, because the time necessarily consumed in obtaining a final declaratory judgment

would, at least in many instances, make it impossible for the charter city to submit annexation proposals to its electors within the time limits prescribed by the procedure set forth in the constitution."

■■■ In McConnell, the Court apparently assumed that the word "resolution," as used in the Sawyers Act, was the equivalent of an annexation "ordinance." We make no such assumption. Rather, it appears to us that the resolution might well be a ministerial direction to the city's legal officers to institute and prosecute a declaratory judgment suit. 5 McQuillin, Municipal Corporations, 3rd Ed., § 15.02. Considered in that light, an *ordinance* of annexation under § 20, and the vote thereon, might be deferred until after the declaratory judgment had been obtained, thus conforming the timing of those two procedures. However, as pointed out in McConnell, there are two other methods provided in § 20 for instituting charter amendments (and annexations, as we hold); one, the submission by a charter commission, and the other, by a petition of not less than ten per cent of the registered electors. In either of such instances, the legislative body shall at once provide by ordinance that such amendment be submitted to a vote of the electors "at the next election held in the city not less than sixty days after its passage, or at a special election held as provided for a charter." As pointed out in McConnell, such an election cannot be deferred beyond the periods specified in § 20, and the application of the Sawyers Act would interfere with the constitutional procedure. For these reasons we hold the Sawyers Act inapplicable, and in so far as it purports to apply to a constitutional charter city as a mandatory procedure, it is also unconstitutional. We adhere to the result and, generally, to the reasoning of the McConnell case. If a charter city should *elect* to use the Sawyers Act procedure in advance where it intended to annex by *ordinance* under § 20, Art. 6, we would see no objection. It might thereby foreclose a subsequent test of the rea-

sonableness and necessity of the annexation.

At this point we deem it appropriate to review briefly three of the earlier cases on the subject; these were decided, of course, under the 1875 Constitution. In City of Westport v. Kansas City, 103 Mo. 141, 15 S.W. 68, the validity of the annexation of the City of Westport by Kansas City was in question. Kansas City was then under a constitutional charter, adopted under § 16 of Art. 9 of the 1875 Constitution; a legislative act provided that a charter city might extend its limits by ordinance and permitted the annexation of another city if four-sevenths of the voters of that city approved, without making any reference to the necessity of a vote in the annexing city. The voters of Westport had approved; no vote had been taken in Kansas City. The constitutional provision for the amendment of a charter required a three-fifths majority of the voters of the charter city. The opinion does not specifically discuss the charter provisions dealing with annexation, but it is inferred that they were in conformity with the statute and permitted annexation by ordinance except as to incorporated cities and towns. The charter did define the territorial boundaries. In holding the legislation void as in conflict with the constitutional requirements for an amendment of the charter, the Court said, in part 15 S.W. loc. cit. 69, 70: "This section, defining the limits of Kansas City, is made a part of the charter, and the question whether it might or might not have been omitted is foreign to the present inquiry. * * * It is too plain to admit of any doubt that any act on the part of Kansas City which contracts or expands its territorial jurisdiction is an amendment of its charter. * * * When the constitution says these cities shall have the power to amend their own charters in one way only, the legislature cannot give to them the power to amend their charters in a different way. The prohibition is binding upon the legislature as well as upon the cities themselves. * * * This case has received that attention which its importance demands, and our conclusions are that the constitution denies to the city of Kansas the right to extend its corporate limits, except by first submitting the proposition to and procuring the consent of three-fifths of the voters of that city voting on the proposition; that section 41 of the act of the legislature of March 10, 1887, is void, in so far as it attempts to give cities adopting charters for their own government the power to extend their corporate limits without submitting the proposition to the voters of such cities; and that the ordinance in question, based upon the authority of that section of the act of 1887, is also void. It follows that the territory which the ordinance seeks to add to Kansas City is not within the limits of that city."

In City of Kansas City v. Stegmiller, 151 Mo. 189, 52 S.W. 723, the validity of the Westport annexation was again involved. The statute involved in Westport v. Kansas City had then been amended to comply with the constitutional requirement of a vote in the annexing city. The Court construed the Westport opinion as directly invalidating a provision of the Kansas City Charter which (it says) provided for annexation by ordinance; but it upheld the annexation as consummated subsequently under the constitutional provision for an amendment of the charter. There the Court said, in part, 52 S.W. loc. cit. 725: "When confronted with this provision of our organic law as authority for the extension assailed in this case, learned counsel say they do not deny that Kansas City may amend its charter for some purposes, nor that an extension of corporate limits is an amendment, but they deny that this kind of amendment, to wit, an extension, is authorized by the constitution. But this attempted restriction is not to be found in the constitution itself. The only limitation of the power of amendment is that it must be adopted by three-fifths of the qualified voters at a general or special election, after the due publication of the proposal, and that the charter as amended shall always

be in harmony with and subject to the laws of the state. In City of Westport v. Kansas City, 103 Mo. 147, 15 S.W. 68, it was unanimously ruled by this court in division No. 1 that 'it was too plain to admit of doubt that any act on the part of Kansas City which contracts or expands its territorial jurisdiction is an amendment of its charter,' and 'an amendment, too, within the purview of section 16 of article 9 of the constitution.' The amendment in that case was attempted by ordinance without the vote and assent of the voters of the city, and for that reason alone was held ineffective. Both upon the authority of that case and the obvious reading of the constitution, we hold that, in so far as the action of Kansas City alone is concerned, there is a plain constitutional grant of the power to extend its limits, and a definite mode pointed out." The Court further held that it was within the power of the legislature to provide for the absorbing of other cities or towns in an annexation.

In State ex inf. Major, Atty. Gen. v. Kansas City, 233 Mo. 162, 134 S.W. 1007, the precise question involved (aside from reasonableness) was the extent or majority of the vote required in an election approving an annexation. But speaking by way of construction of the constitutional provision, the Court said in part, 134 S.W. loc. cit. 1011: "By expressly providing for the manner of amending the charter, the acceptance of the same by the requisite number of qualified voters, and by the addition of the words 'and not otherwise,' this constitutional provision is made self-enforcing, prohibitive, and not subject to change or modification, either by charter. enactment of the city or by act of the General Assembly. * * * Under the decisions of this court, the power of the respondent to amend its charter and the vote necessary therefor, like the power to adopt the charter in the first instance and the vote required for that purpose, is derived directly from the Constitution, and no charter or legislative provision was necessary in either case." In view of our comparatively recent holdings we do not consider that the omission of the words "and not otherwise" from § 20 of Art. 6 of our 1945 Constitution is determinative.

 In the case of McDonnell Aircraft Corporation v. City of Berkeley, Mo., 367 S.W.2d 498, the Court said, loc. cit. 500: "It is well settled that the method by which a charter city may annex territory is by charter amendment. City of Westport v. Kansas City, 103 Mo. 141, 15 S.W. 68; Kansas City v. Stegmiller, 151 Mo. 189, 52 S.W. 723; State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007; State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762." The Court there also held, however, that the bringing of additional territory into cities without the consent of the inhabitants of the area was a governmental function in which the whole state had an interest; and further, that §§ 19 and 20 of Art. 6 do not give full and unrestricted legislative power to constitutional cities. We interpret this to mean that the legislature may step in where problems of state policy and interest are concerned; that it may express a state policy concerning territory to be annexed, as it has in § 71.015 by requiring that the action be "reasonable and necessary to the proper development" of the annexing city, thus expressly giving to the courts the power to inquire into that question. But the Berkeley case reaffirms the principle that the legislature may not prescribe a procedure for annexation which is in conflict with constitutional provisions; and it does not hold that express legislative authority or power is necessary before a constitutional charter city may make an annexation by charter amendment under § 20 of Art. 6.

 We have independently examined such authorities as could be found from other states, but they are of little help; most of the constitutional and statutory provisions vary widely from ours; moreover, the few cases which we find seem to be in considerable conflict. At least one

holds that legislation is necessary for annexation even though there are constitutional provisions for charter amendments (State ex rel. Snell v. Warner, 1892, 4 Wash. 773, 31 P. 25, 17 L.R.A. 263), whereas we have held specifically that § 20 of Art. 6 is self-enforcing and effective to permit annexation without legislation. McConnell, Taylor, supra. In Oregon it is said, Cooke v. City of Portland, 69 Or. 572 139 P. 1095, loc. cit. 1096, that "* * * an enlargement of the territory of a city is in its true nature an amendment of its charter."

From a consideration of our Constitution, statutes and adjudicated Missouri cases, we have come to certain definite conclusions. Section 20 of Art. 6 of the Constitution gives to charter cities a power of annexation by charter amendment which is equivalent to a statutory authorization, McDonnell Aircraft Corp. v. City of Berkeley, supra, 367 S.W.2d loc. cit. 502; by virtue of the very constitutional power to adopt a charter, such a city acquires legislative authority to be exercised where not inconsistent with the constitution or general law. General Installation Co. v. University City, Mo., 379 S.W.2d 601. Section 20 also fixes, irrevocably, the mode by which charter cities may annex territory, and the legislature has no authority to eliminate the constitutional requirement or to fix any method inconsistent with it. A charter city may not ignore the mode of annexation so fixed, and it may, by virtue of § 20 alone, annex unincorporated territory, subject to a test in the courts of the reasonableness and necessity of its action. On matters of state policy or interest, including regulations and limitations concerning territory outside the city, the legislature may act, so long as it does not interfere with the constitutional method of annexation or enact laws inconsistent with it. The statutes recently enacted applicable to first class charter counties (St. Louis County, at present) come within that classification. Sections 71.860–71.920, Laws 1963. Thus, although the legislature may not change the method by which such cities may annex, it may provide the scope of any such annexation and add requirements therefor as, for instance, in the annexation of other cities, towns or villages. See Section 82.-090. We adhere to the previously stated proposition that every annexation by a charter city is a charter amendment.

We are told that Hannibal was first incorporated under a special legislative charter in 1845, and that it adopted a new charter in 1873. It appears also that it has from time to time made annexations of territory under its charter provisions and legislative authority, presumably by ordinance. Counsel refer in this regard to § 81.200, applicable to special charter cities of 20,000 or more, which was preceded by similar statutes. It would not seem, however, that Hannibal could have consummated any annexations thereunder before 1930, since its population did not exceed 20,000 until that time, according to the official census. In 1957 the city adopted its present Home Rule Charter under § 19 of Art. 6 of our Constitution, and it is said that several annexations have been made since that time by proceedings under the Sawyers Act, § 71.015, and by ordinances as provided in the charter. Under § 19, Art. 6, we take judicial notice of the provisions of the charter. Section 1.01 of Art. 1 thereof is as follows: "Section 1.01. Incorporation: Seal. The inhabitants of the City of Hannibal, Missouri, within the corporate limits as now established or as hereafter established in the manner provided by law, shall continue to be a municipal body politic and corporate in perpetuity, under the name of the 'City of Hannibal', and by that name shall have a common seal which they may change and alter at pleasure." A portion of § 1.06 is as follows: "Section 1.06. Alteration of Boundaries and Additions to the City: How Made. The boundaries of the City of Hannibal as established at the time of the adoption of this charter may be altered, changed, enlarged or diminished from time to time as tracts or parcels of land are duly added to or removed from the limits

and boundaries of the city or by lawful action of the city.

"Any tract of land adjoining the City of Hannibal may be annexed to the city upon passage of an ordinance by the City Council to that effect and duly enacted pursuant to the applicable laws of the State of Missouri in force at the time of such annexation. * * *" Section 1.07 is as follows: "Section 1.07. Boundaries: Description. In each printed edition of the Revised Ordinances of the City of Hannibal hereafter published, the then existing boundaries of the City of Hannibal shall be set out by map or otherwise adequately described." Generally, the charter sought to provide that the City should have all the powers which it was "possible for a city to have under the Constitution and laws of Missouri * * *."

Counsel urge the supposed importance of the fact that the charter did not describe the then existing city limits by metes and bounds. It further appears that such method was purposely avoided. This argument is based upon the provisions of § 82.090, RSMo 1959 (Amended Laws 1959) which provides, first, that any constitutional charter city may extend its limits by ordinance, specifying the new lines, and that certain specified requirements shall be followed where an annexation includes an incorporated city, town or village. The concluding portion of the section is as follows: "In all cases where the corporate limits are defined in the charter of the city, the ordinance extending the limits shall be in the form of a proposed amendment to the charter of the city, and before the amendment shall be of any force or effect, it shall be submitted to and accepted by a majority of the qualified voters of the city voting at a general or special election, in all respects and in compliance with all the requirements provided for amendments to the charter of the city." That statute has, in substantially similar form, been in effect for many years and the concluding portion was presumably enacted to comply with the requirements of the opinion in City

of Westport v. City of Kansas City, 103 Mo. 141, 151, 15 S.W. 68, 70. The form of the statute has changed from time to time. Counsel for the City thus say that this statute by its very terms recognizes that in certain cases annexations need not be made by charter amendment, and that the provisions of the charter may control. The difficulty with that argument is that we must first consider and construe the Constitution, not the statutes. The statute purports to provide that where the "corporate limits are defined in the charter," a charter amendment is necessary for an annexation. The City insists that its limits are not so defined,—therefore, no amendment is necessary.

■■■■ To our minds this is a wholly unsubstantial distinction. In the Hannibal Charter, and in any other charter, the city limits *as then existing* are recognized and adopted, at least by reference. No valid city government could be created or valid charter adopted if the City's territorial limits existing at the time were not specifically defined and delineated *somewhere*; this may be done by means of a map, or by a prior act or acts of incorporation as amended by subsequent changes on file. The provisions of the present charter include the following: "the corporate limits as now established"; a requirement that all printed editions of the "Revised Ordinances" shall set out the then existing boundaries "by map or otherwise"; that "[T]he boundaries * * * as established at the time of the adoption of this charter may be altered, changed * * * from time to time * * *." We hold that the City has defined its corporate limits in its charter, and that in fact no city can legally adopt a valid charter without "defining" in some manner its existing corporate limits. "A municipal corporation must have both territory and inhabitants; the corporation consists of both territory and inhabitants; both are indispensable to its existence." 37 Am.Jur. 619, Municipal Corporations, Sec. 3; see also 62 C.J.S. Municipal Corporations § 38, p. 118. In

Cooke v. City of Portland, 69 Or. 572, 139 P. 1095, 1096, it is well said: "It is manifest that a description of the boundaries of a city is an essential element of its fundamental law. It is impossible to conceive of a city charter which would not contain provisions of that kind limiting its territorial jurisdiction." Any other holding would permit a city by its own devious omission to escape the constitutional requirement of a vote of the people. An annexation under the Hannibal charter is a charter amendment equally with an annexation under a charter setting out the city limits by metes and bounds. While it is not material to our decision, we note that by necessary inference the legislature in the last sentence of § 82.090 recognized that some annexations by charter cities constitute charter amendments, regardless of the methods of annexation provided in the charters themselves. Moreover, since we hold that the corporate limits of Hannibal are defined in its charter, that last sentence of § 82.090 would be applicable; this expressly requires that all annexations shall be made by charter amendment, and thus conforms to the constitutional requirements.

Section 20 of Art. 6 of the Constitution sets out the exclusive mode of annexation for constitutional charter cities. Our cases have so stated for many years. Counsel for the city seek here to distinguish the Taylor and McConnell cases on the ground that the Court was not there discussing the constitutionality of a mode of annexation by ordinance alone, but only the method of amendment specifically provided in the Kansas City Charter. That is true, but this Court, both in those cases and in the prior and subsequent cases already discussed, has clearly indicated the view that *any* annexation by a constitutional charter city *is a charter amendment* and that the method provided therefor shall be followed. We adhere to those views and we feel, moreover, that this holding results in a desirable uniformity in the method to be used by charter cities. It follows that in so far as § 82.090 purports to permit a

charter city to annex territory by ordinance alone it is unconstitutional, and we so hold.

It is unnecessary to discuss the one or two remaining points of appellant's brief, particularly the desirability of a declaratory judgment suit for a determination of the reasonableness of an annexation and to balance the interests of the opposing parties, and the point that annexation is really a matter germane to and in the sphere of local government.

There is nothing directly before us dealing with the status of the property and persons affected by Hannibal's prior annexations. That question will be considered when the proper occasion arises.

The only consideration which prevents us from affirming the present judgment is the possibility that the city may elect to avail itself of the Sawyers Act procedure, to be followed (if successful) by the annexation procedure of ordinance and election under § 20 of Art. 6 of the Constitution. With that in mind, we reverse the judgment and remand the cause, in order that the Court may afford the city an opportunity to so elect; if it declines, the original judgment should be re-entered, and we so direct.

HOLMAN, HENLEY and FINCH, JJ., and STONE, Special Judge, concur.

HYDE, J., concurs in separate concurring opinion filed.

STORCKMAN, C. J., dissents in separate dissenting opinion filed.

HYDE, Judge (concurring).

I fully concur in the opinion of EAGER, J., herein and consider the views expressed in his opinion to be supported by the history of Sec. 82.090 on which appellant relies. The enactment out of which this section came (Laws 1887, pp. 42, 49) was Sec. 41 of the act of March 10, 1887, applying to cities

authorized to frame their own charters (then applying only to cities of more than 100,000, Sec. 16, Art. 9, 1875 Const.) and authorized extension of limits by ordinance. This became Sec. 1880, RS 1889, but was broadened then to include certain special charter cities, the first sentence then reading as follows: "Any such city, *or any other city of ten thousand inhabitants or less and having a special charter*, after the taking effect of such charter, may at any time or times extend its limits by ordinance, specifying with accuracy the new line or lines to which it is proposed to extend such limits." (Italicized words were added.)

However, this statute was amended in 1895 (Laws 1895, p. 54) by adding at the end of the section the following proviso: "Provided, that if the city, the limits of which are to be extended, is organized under section 16 of article 9 of the constitution of this state, then the ordinance extending the limits shall, in all cases where the corporate limits are defined in the charter of such city, be in the form of a proposed amendment to the charter of such city, and before the same shall be of any force or effect, it shall be submitted to and accepted by three-fifths of the qualified voters of such city voting at a general or special election, in all respects and in compliance with all the requirements provided for amendments to the charter of such city." Why was it so amended? Undoubtedly because this court in 1890 in City of Westport v. City of Kansas City, 103 Mo. 141, 151, 15 S.W. 68, 70, held: "[S]ection 41 of the act of the legislature of March 10, 1887, is void, in so far as it attempts to give cities adopting charters for their own government the power to extend their corporate limits without submitting the proposition to the voters of such cities."

Surely the effect of this 1895 amendment was to leave this statute as only authorizing a city of ten thousand or less, having a special charter, to extend its boundaries by ordinance; and to repeal the authorization, which this court had declared void, for cities organized under Sec. 16 of Art. 9

of the Constitution to extend their boundaries by ordinance. This statute containing the 1895 proviso in exactly the same form appears in the following subsequent revisions, 1899, Sec. 6399; 1909, Sec. 9743; 1919, Sec. 8894; 1929, Sec. 7483; 1939, Sec. 7626; and during all that period there was no constitutional charter city except Kansas City. However, in the 1949 revision, the words "[p]rovided, that if the city, the limits of which are to be extended, is organized under section 16 of article IX of the Constitution of this state, then the ordinance extending the limits shall" were omitted. Thereafter, in the 1949 and 1959 revisions, this former proviso appears as a complete separate sentence beginning: "In all cases where the corporate limits are defined in the charter of such city, *the ordinance extending the limits* shall be in the form of a proposed amendment [etc.]." (The italicized words being moved from the place they previously were in the proviso and all reference to any constitutional provision omitted.) Also in the 1949 revision, the words "or any other city of ten thousand inhabitants or less, and having a special charter," in the first sentence of the section, were omitted. Thus special charter cities were eliminated and this statute seemed intended to again apply to constitutional charter cities as it was originally enacted in 1887. If, as this court held in the City of Westport case, the Legislature could not authorize a city framing its charter, under authority of Sec. 16, Art. 9, of the Constitution, to extend its limits by ordinance, this could not be done by the Legislature in 1949 and certainly not in a mere revision of the statutes (for authority of revisors see Laws 1949, p. 545, especially Sec. 3.06, p. 547) the present constitutional provisions (Secs. 19–20, Art. VI, 1945 Const.) being substantially the same in this respect. In 1959, by Senate Bill 75, this section was repealed and reenacted in its present form, the principal change being the elimination of the requirement of a three-fifths vote and substituting a majority vote for annexation, no doubt because of our decision in 1950 in State ex

inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762.

Although the Legislature cannot change the method by which the charter of a constitutional charter city may be amended, because the Constitution provides the only way it may be done, I recognize that the Legislature may provide the scope of annexation that could be accomplished by an amendment and add requirements therefor as it did in Sec. 82.090 for annexing other cities, towns or villages; and has since done by Secs. 71.860–71.920, Laws 1963, p. 126 as to certain first class counties. However, if there is no law imposing any restrictions on annexation of unincorporated territory, it is my view that a constitutional charter city may do what other cities may do by annexation because it is not inconsistent with the Constitution and laws of this state to do so. (See discussion of this authority in McDonnell Aircraft Corporation v. City of Berkeley, Mo.Sup., 367 S.W.2d 498, 500–503.) The provisions of Secs. 19–20, Art. VI, 1945 Constitution, grant to cities, organized under it, a part of the legislative power of the state. Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195, 202; see also Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943, in which this court held to be without merit the contention that a constitutional charter city could not have the power of eminent domain without an enabling act of the legislature. This constitutional grant of legislative power to such cities by the Constitution is the reason why such cities may annex unincorporated territory by charter amendment.

The view expressed in the dissenting opinion herein that constitutional charter cities cannot annex any territory without an enabling act of the legislature would amount to striking out of Sec. 19, Art. VI, the words "consistent with and subject to the * * * laws of the state" and substituting therefor the words "specifically authorized by the laws of this state." The main purpose of providing for constitutional charter cities was to make it unnecessary for the larger cities to go to the legislature for laws to authorize every act their interests seemed to require. If this constitutional provision is to be so narrowly construed as to prevent enactments for local needs which are not in conflict with any state laws, then constitutional charter cities could have no real purpose and might as well be abolished. Of course, constitutional charter cities would not be authorized to so annex other cities already organized under authority of the legislature (which would be inconsistent with laws of this state); and that is why it was necessary for the legislature to provide a method by which this could be done, which it did by enacting Sec. 82.090. Legislative authority is required to authorize any annexation by cities organized under general statutes and these statutes have the effect of charter provisions for cities so organized. However, the Constitution, by granting legislative power to constitutional charter cities, makes a charter amendment the proper method of annexation. This must be true because, as the principal opinion shows, defining corporate limits in its charter in some manner is an essential part of a valid charter. Therefore, a change in corporate limits must be a charter amendment.

I also agree with the suggestion expressed in the principal opinion that the council of a charter city intending to proceed with annexation by ordinance on its own initiative could first adopt a resolution of intent and obtain a declaratory judgment under the Sawyers Act (Sec. 71.015) procedure and thus obtain a determination of reasonableness and necessity before adopting a charter amendment ordinance for annexation, which would prevent litigation on that issue after the charter amendment election. However, such a course would be completely optional. In fact, there is nothing in the Sawyers Act that requires such a resolution for any city. All the Act says is: *"Whenever the governing body of any city has adopted a resolution to annex any unincorporated area of land, such city shall,* before proceeding as otherwise authorized by law or charter for annexation of unincorporated areas, *file an*

*action in the circuit court* of the county in which such unincorporated area is situated, under the provisions of Chapter 527 RSMo 1949, praying for a declaratory judgment authorizing such annexation." (Emphasis mine.)

"A resolution is ordinarily ministerial in character and relates to the administrative business of the municipality, whereas an ordinance is distinctively a legislative act." 5 McQuillin, Municipal Corporations 52 Sec. 15.02. Nowhere in Sec. 71.015 is there any requirement that there be a resolution to begin annexation proceedings and there is no reason why there must be a resolution in the annexation process. There can be no doubt that annexation is the exercise of legislative power so that an ordinance which is a legislative act is required. Thus only if the term "resolution" is construed to include "ordinance," as suggested in the McConnell case (282 S.W.2d 518), would the provisions of Sec. 71.015 be mandatory as to any city. This is true because a city can annex without a resolution but cannot annex without an ordinance. Literally, by its terms, Sec. 71.015 only requires a declaratory judgment *"whenever"* a resolution has been adopted and it does not anywhere *require* the adoption of a resolution. In any event, Sec. 71.015 cannot be construed as a mandatory requirement for annexation by a charter city as the principal opinion so clearly shows. Therefore, I concur in the judgment ordered to be entered.

STORCKMAN, Chief Justice (dissenting).

If the appellate review of this case were kept within the limits made by the record before us, the issue would be quite a narrow one. The essential question on the trial court record is whether a charter city organized under §§ 19 and 20 of Art. 6 of the 1945 Constitution whose governing body has adopted a resolution proposing to annex unincorporated territory is lawfully authorized to maintain a suit for a declaratory judgment under § 71.015, RSMo 1959, V.

A.M.S., "before proceeding as othewise authorized by law or charter for annexation of unincorporated areas".

As required by § 71.015, commonly referred to as the Sawyers Act, the plaintiff's petition presents the issues of whether "such annexation is reasonable and necessary to the proper development of said city" and whether the city has the ability "to furnish normal municipal services of said city to said unincorporated area within a reasonable time after said annexation is to become effective." Section 71.015 does not require pleading or proof of the procedure intended to be followed after the issues are decided in favor of the city. The only pleading filed by the defendants was a motion to dismiss which was sustained. The trial court's order of dismissal was "granted on the grounds that under the provisions of Art. VI. Sect. 20, Mo.Const., 1945, the Court does not have jurisdiction of the subject matter, and the said petition is therefore ordered dismissed, with prejudice."

Both the principal and concurring opinions reach the conclusion that the use of the Sawyers Act by a constitutional charter city is not mandatory but is elective or optional. In conclusion the principal opinion states: "The only consideration which prevents us from affirming the present judgment is the possibility that the city may elect to avail itself of the Sawyers Act procedure, *to be followed (if successful) by the annexation procedure of ordinance and election under § 20 of Art. 6 of the Constitution.* With that in mind, we reverse the judgment and remand the cause, in order that the Court may afford the city an opportunity to so elect; if it declines, the original judgment should be re-entered, and we so direct." (Italics added.) The concurring opinion in the last two paragraphs agrees with this judgment and procedure, stating that "such a course would be completely optional."

The City of Hannibal *has* exercised its option or elected to avail itself of the Sawyers Act procedure. As shown by the rec-

ord and recognized in the principal opinion, the governing body of the City adopted appropriate resolutions evidencing its intention to annex and it has filed its suit for a declaratory judgment in conformity with § 71.015. In my opinion, the requirement of the principal opinion, italicized in the immediately preceding paragraph, that the City further elect to proceed by "ordinance and election" is not warranted on the record. It may be that by a proper pleading in a declaratory judgment action such an issue could be presented for adjudication, but neither the petition nor the motion to dismiss does so. It is difficult to comprehend how a requirement to elect as to further procedure could be engrafted upon the statutory action which is described rather completely in § 71.015.

The trial court appears to have ruled the motion to dismiss on the assumption that the City of Hannibal as a charter city could only extend its territorial limits by a charter amendment and that a declaratory judgment under the Sawyers Act was incompatible with that procedure. At any rate, the briefs are fashioned along those lines and perhaps it is necessary for the opinions to do likewise. This demonstrates, however, the disadvantage of disposing of a case before the issues are properly developed and isolated in a proper proceedings.

The trial court as well as the principal opinion relies upon McConnell v. City of Kansas City, Mo., 282 S.W.2d 518, which in turn is based on statements in State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, which we believe to be unnecessary and erroneous. The principal opinion does disavow, and very properly so, the assumption made in McConnell that a "resolution" as used in § 71.015 was the equivalent of an annexation ordinance.

The earliest Missouri case pointing out the distinction between resolutions and ordinances is City of Cape Girardeau v. Fougeu, 30 Mo.App. 551, 556, in which the court stated: "According to ordinary parliamentary practice, a resolution is a very different thing from a law or an ordinance. A resolution is merely a suggestion or direction in writing, concurred in by the two houses of the assembly, if there be two houses, or passed by one house, if there be but one, and not submitted to the executive for his approval. A resolution is ordinarily passed without the forms and delays which are generally required by constitutions and municipal charters as prerequisites to the enactment of valid laws or ordinances. It need be read but once and may be passed by a *viva-voce* vote, without calling the ayes and noes, whereupon, when engrossed, it becomes operative." In State ex rel. Jones v. Atterbury, Mo., 300 S.W.2d 806, 817, this court in banc stated: "Generally, it may be said that a legislative body uses a resolution to express an opinion or purpose with respect to a given matter or thing and it is temporary in nature, while a law is intended to direct and control permanently matters applying to persons and things in general." The court in banc again recognized the distinction in State ex rel. Whittington v. Strahm, Mo., 374 S.W.2d 127, 131. See also Schmoll v. Housing Authority of St. Louis County, Mo., 321 S.W.2d 494, 498–499 [2–4]; City of Springfield to use of McEvilly v. Knott, 49 Mo.App. 612, 617; City of Poplar Bluff, to use of Wheeler v. Hoag, 62 Mo.App. 672, 675–676; Wheeler v. City of Poplar Bluff, 149 Mo. 36, 49 S.W. 1088, 1089 [2].

Another distinction not noted in the McConnell case is that § 71.015 deals with the "governing body of any city" and "such city" undertaking an annexation. That was the factual situation in the McConnell case as in the case at bar. No case has been brought to our attention where a proposal to annex territory has been initiated by the petition of electors which is an optional procedure for amendment of a city charter as set out in § 20 of Art. 6. There is no statutory authority for the annexation of additional territory by the petition of the electors of any city including charter cities.

If annexation is a governmental function, as we shall undertake to demonstrate, it must follow that the electors of a constitutional charter city could not lawfully initiate an annexation proceeding and conclude it by a charter amendment without legislative authority. There are sound reasons why it should not be permitted.

In order to determine the extent of legislative control over the annexation of territory by constitutional charter cities, we must first determine what *powers* are granted to such cities by the "home rule" provisions of §§ 19 and 20 of Art. 6. The grant of power is found solely in the first sentence of § 19. It reads as follows: "Any city having more than 10,000 inhabitants may frame and adopt a charter for its own government, consistent with and subject to the constitution and laws of the state, in the following manner." This is the sum total of the grant of "home rule" government. Everything else in §§ 19 and 20 deals with the "manner" of adopting an original charter and thereafter amending it. Missouri was a pioneer in providing home rule but a number of states have the same or similar provisions. Much has been written by way of establishing what matters are purely municipal affairs within the meaning of "a charter for its own government" and what are governmental matters of state-wide concern which are reserved for legislative control by the phrase "consistent with and subject to the * * * laws of the state." Quotations from some of the treatises and opinions will sufficiently indicate the guidelines that have been established.

"It is an essential element of all constitutional provisions establishing the principle of municipal home rule that the Constitution and general laws of the state shall continue in force within the municipalities which have framed their own charters, and that the power of the municipality to legislate shall be confined to municipal affairs. Such charters do not supersede or prevent the enactment of state laws of general concern, in which the state has a sovereign interest; and where the provisions of such charters, or of legislation enacted thereunder, conflict with the general laws of this character, the state laws will prevail." 37 Am.Jur., Municipal Corporations § 106, pp. 715–716.

"In general, home-rule provisions of a state constitution make a home-rule municipality free from the control or supervision of the legislature as to powers or functions which are municipal or local in character, or as to matters, exclusive control of which is given to the municipality by the constitution. On the other hand, constitutional provisions securing to municipal corporations freedom from legislative interference are not regarded as a complete surrender of the governmental powers and functions of the state; and with respect to governmental powers and functions, and matters of general state-wide concern, as distinguished from matters of purely local and municipal character, the municipal corporation remains amenable to state control, in the absence of express exemption. Notwithstanding such a constitutional provision, the relation of the municipal corporation to the state is not altered; the municipal corporation remains the creature of the state, its agent in the exercise of governmental functions." 62 C.J.S. Municipal Corporations § 187, pp. 345–346.

A comprehensive article entitled, "Municipal Home Rule in Missouri", published in the 1953 Volume of the Washington University Law Quarterly, written by Mr. Henry J. Schmandt, a Missouri lawyer, then an Assistant Professor of Government at St. Louis University, is well-worth reading in its entirety. The portion of particular interest here, however, concerns the rules established by the cases of State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 2 S.W.2d 713, Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74, and Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195.

Analyzing and quoting from these cases, Mr. Schmandt had this to say, pp. 392–394:

"If there were any doubts as to the judicial acceptance of the governmental-proprietary function rule, they were unequivocally resolved in Coleman v. Kansas City, a case which dealt with a conflict between the provisions of a state statute and the Kansas City charter pertaining to the salaries of the local license collector. In holding that the statute prevailed, the court declared:

"* * * [A]s to matters pertaining to private, local corporate functions the city holds its power independent of control by the General Assembly, but as to governmental functions the State retains control. On this point the city's argument is wholly based on the fact that the license taxes are used exclusively for municipal purposes. That fact is not determinative. *The distinction is not between local and general concern, but between corporate and governmental functions. The power of taxation is a governmental function* * * * [Italics added.]

"It should be observed that the Carpenter and Coleman cases did not constitute a complete return to the Garner doctrine [State ex rel. Garner v. Missouri & K. Telephone Co., 189 Mo. 83, 88 S.W. 41] insofar as that ruling would deny a home rule city control over any governmental function in the absence of statutory delegation. The two later cases would permit a self-chartered municipality to exercise jurisdiction and control over such activities without legislative authorization if they were primarily of local concern and if there was no contrary or conflicting enactment of the General Assembly in existence. This was the rule that was emphasized in a comprehensive summation of the powers of a home rule city which the court undertook in Kansas City v. J. I. Case Threshing Machine Company [337 Mo. 913, 923, 87 S.W. 2d 195, 200]. Admitting that its prior decisions were by no means harmonious, the

court defined the significance of local rule, saying:

"It is an essential element of all constitutional provisions establishing the principle of municipal home rule that the Constitution and general laws of the State shall continue in force within the municipalities which have framed their own charters, and that *the power of the municipality to legislate shall be confined to municipal affairs.* On the other hand, after the adoption of a home rule charter by a municipal corporation, *the Legislature cannot, even by a general law, affect the powers of the municipality with respect to matters of municipal and local concern.*

"* * *

"* * * [A]s to its form of organization and as to its private, local corporate functions, and the manner of exercising them, the Constitutional provision grants to the people of the cities designated, part of the legislative power of the State for the purpose of determining such matters and incorporating them in their charter as they see fit, free from the control of the General Assembly * * *. [I]n matters, which are governmental functions, the State retains control and as to such matters, the provisions of a city charter, although adopted under the constitutional provision therefor, must be and remain consistent with and subject to the statutes of the State enacted by the Legislature.

"It is * * * sometimes difficult to determine the border line between governmental and corporate functions * * *. However, certain functions have, by this court, definitely been determined governmental, the control of which remains in the State. The police power is one * * *. Some of the other matters, which are purely governmental functions, are those pertaining to suffrage and elections, education, regulation of public utilities and admin-

istration of justice * * *. These may be delegated to or taken away from the city in whole or in part, within the wisdom of the Legislature. [337 Mo. at 926, 927, 87 S.W.2d at 202, 203.]

"Despite the court's patent inconsistency and lack of preciseness in terminology, it now appeared from this series of cases that the constitutional ambiguities of the home rule provisions had finally been resolved in favor of the governmental-corporate functions doctrine, with the problem of distinguishing between the activities which fall into these respective categories remaining."

State ex rel. Carpenter v. City of St. Louis, 318 Mo. 870, 2 S.W.2d 713, 720 [8], referred to in "Municipal Home Rule in Missouri", held that: "Matters of purely municipal, corporate concern a special charter may control, and it may not be amended by a special law, though it must be in harmony with the general law where it touches upon matters of state policy." An apt statement from State ex rel. Reynolds v. Jost, 265 Mo. 51, 175 S.W. 591, 595, is: "In fact, the very constitutional provision behind which respondents seek to hide limits the scope of their charter powers. Such document, upon matters of general state concern, as is the peace and safety of its citizens, must be subject, not only to the Constitution, but the laws of the state as well."

Generally speaking, the constitutional requirement that the city charter must be consistent with and subject to the Constitution and laws of the state means that inconsistent charter provisions and ordinances concerning the exercise of governmental functions are void. Turner v. Kansas City, 354 Mo. 857, 191 S.W.2d 612, 615 [2]; State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S.W.2d 532, 537 [6].

The next question is whether the annexation by cities of additional territory is a governmental function of state-wide concern or merely a municipal or corporate affair. In all cases where the issue has been squarely presented, it has been decided that annexation is governmental in nature and subject to control by the general assembly. In this regard the court held in State ex rel. and to Use of Behrens v. Crismon, 354 Mo. 174, 188 S.W.2d 937, 939 [2], that the power to create or establish municipal corporations or to enlarge or diminish their area is a political function which rests solely in the legislative branch of the government and is practically unlimited in the absence of constitutional restrictions. In Town of Alexandria v. Clark County, Mo., 231 S.W. 2d 622, 624 [5], it was held that the territorial limits of a political subdivision, like the power to tax, is a political question to be determined in the manner specified by the general assembly. Apparently the only limitation on the general assembly with respect to the organization of cities, changing their charters, and specifying the kind of officials and their powers, is that the control must be by general laws. Art. 3, § 40(22) ; Art. 6, §§ 15 and 22, Constitution of 1945.

In the recent annexation case of McDonnell Aircraft Corporation v. City of Berkeley, Mo., 367 S.W.2d 498, 503 [4], this court reviewed cases and held: "Therefore, our conclusion is that *annexation of additional territory is a matter of more than merely municipal affairs and concern* and that the reasons for applying the test of unreasonableness amounting to arbitrary, capricious action and abuse of discretion are equally applicable to annexations by constitutional charter cities and those organized under general statutes." Italics added. Among the cases cited was City of Olivette v. Graeler, Mo., 338 S.W.2d 827, 836 [14].

The basic fallacy of the principal opinion is the contention that a charter city under § 20 of Art. 6 has the "power and authority" to annex unincorporated territory without legislative authority. The opinion, pages 10–11, states this proposition repeatedly and in various ways, such as: that § 20 "gives to charter cities a power of annexation by charter amendment which is equivalent to a statutory authorization"; § 20 "fixes, irrevocably, the mode by

which charter cities may annex territory"; a charter city may "by virtue of § 20 alone, annex unincorporated territory" subject to a judicial determination of reasonableness; that the general assembly may "not interfere with the constitutional method of annexation"; and finally the opinion adheres to the "proposition that every annexation by a charter city is a charter amendment".

The proposition asserted necessarily means that the state by virtue of § 20 has relinquished and ceded to charter cities the state's power and authority to regulate annexation of unincorporated territory which absent any such relinquishment would abide in the general assembly. In this, as in other cases we will mention later, there is a tendency to isolate § 20 from § 19 and to say that § 20 gives an unlimited right to amend a city charter. Even if we consider it alone, the language of § 20 cannot reasonably be given the meaning ascribed to it, but the rule of construction is well established that provisions of a constitution dealing with a single or related subject must be considered together and not as detached fragments or isolated provisions. State ex rel. Randolph County v. Walden, 357 Mo. 167, 206 S.W. 2d 979, 982–983 [3]; Chaffin v. Christian County, Mo., 359 S.W.2d 730, 734 [5]; State ex rel. City of Marshall v. Hackmann, 274 Mo. 551, 203 S.W. 960, 961–962 [3]. Therefore, the right of a city to amend its charter as provided in § 20 must be considered in connection with § 19 which limits the city's legislative power to "a charter for its own government, consistent with and subject to the constitution and laws of the state."

The general assembly has all the legislative power of the state not denied it by the Constitution. Any constitutional limitation on its legislative power must be strictly construed in favor of the general assembly and such limitations must be expressly imposed or clearly implied. Hickey v. Board of Education of City of St. Louis, 363 Mo. 1039, 256 S.W.2d 775, 778 [9, 10]; State ex rel. and to Use of Hughes v. Southwestern

Telephone Co., 352 Mo. 715, 179 S.W.2d 77, 80 [3]; State ex rel. Heimberger v. Board of Curators of University of Missouri, 268 Mo. 598, 188 S.W. 128, 133 [13].

The subject of annexation is not mentioned in either § 19 or 20. No intent can be inferred from the grant of the right to adopt "a charter for its own government" unless annexation is a purely municipal or corporate matter which we have seen from the cases cited it is not. Nor is annexation an inherent right of a city, charter or otherwise, because a city may function as such without the right to extend its limits. Furthermore, the general assembly has undertaken from the beginning to regulate the matter of annexation by all cities because it concerns more than the city itself. It is governmental in nature and of state-wide concern.

The erroneous concept that a constitutional charter city had annexation rights not possessed by other cities arose from cases involving the city of Kansas City. It arose not from a construction of the constitutional provisions but from a misinterpretation or mistaken application of language used in previous decisions involving annexations by Kansas City which had complicated its annexation procedures by setting out the specific description of its boundaries in its original charter adopted pursuant to the constitutional provisions. It is important to keep in mind that prior to the adoption of the 1945 Constitution, which lowered the population requirements from 100,000 to 10,000, Kansas City was the only city in the state that had a constitutional charter under these provisions. In fact, it was the only city in the state that had the requisite population except St. Louis which was chartered under another constitutional provision which imposed similar limitations in granting that city home rule powers.

In 1887 the general assembly enacted legislation implementing the home rule provisions which had first appeared in the 1875 Constitution. Laws 1887, pp. 42–51. Section 41 of the legislative act (p. 49) pro-

vided the manner in which charter cities could extend their limits and set out the further requirements necessary when the area annexed included any incorporated city, town or village. This became § 1880 of the 1889 Revised Statutes and with some amendments is now § 82.090, RSMo 1959, V.A.M.S. Kansas City adopted a home rule charter on May 8, 1889.

There are five decisions of this court dealing with annexations by Kansas City which should be briefly noted. The first case, City of Westport v. Kansas City, 103 Mo. 141, 15 S.W. 68, was an attempt to annex the incorporated City of Westport. Pursuant to the provisions of § 1880, RSMo 1889, the voters of Westport alone had approved the proposition. The essential holding of this court was that since the boundaries of Kansas City were fixed and defined in its charter the annexation could not be by ordinance alone but the charter also had to be amended by the voters of Kansas City in accordance with the constitutional provisions for amending a charter before the annexation could be effective. The pertinent holding in State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007, was that the charter of Kansas City could be amended so as to make an annexation effective by ⅗ths of the electors who actually voted on the proposition as provided in the Constitution instead of the greater majority of ⅗ths of all qualified voters of Kansas City as required by the Kansas City charter.

The case of Kansas City v. Stegmiller, 151 Mo. 189, 52 S.W. 723, was the second and successful attempt by Kansas City to annex the City of Westport. This time the council of Kansas City passed a resolution proposing the annexation and the proposition was approved by the voters in both cities. The opinion held that § 1880, RSMo 1889, as amended, Laws 1895, p. 54, relied on by Kansas City, was a valid enactment, that the City of Kansas City had complied with the requirements of the Constitution with respect to amending its charter, and that by reason of such amendment the an-

nexation had become effective. The essential question determined in State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, was that the voters of Kansas City could approve an annexation ordinance by a majority vote of the electors as provided in the Constitution for amendment of city charters rather than by a ⅗ths majority required by the statute which had not been amended to conform to a change in the Constitution.

McConnell v. City of Kansas City, Mo., 282 S.W.2d 518, held in effect that the Sawyers Act was not applicable to annexations by Kansas City because the Act was incompatible with constitutional provisions regulating the amendment of the charter of Kansas City in that a resolution (treated as an ordinance) could not be adopted and a declaratory judgment obtained within the time for holding elections for the approval of amendments as provided in the Constitution; further it discussed a possible conflict if an annexation were to be attempted by means of the initiative method of amending the charter. This latter question was not before the court because, among other reasons, the annexation was initiated by an ordinance enacted by the city council.

The McConnell case, Mo., 282 S.W.2d 518, and State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, were referred to by the trial court and are chiefly relied upon by the respondents herein. The McConnell case, referring to Kansas City, stated that "an extension of a city's corporate limits is a charter amendment within the purview of Art. VI, § 20" (282 S.W.2d at 520), and cited the Taylor case as its authority. The Taylor case, 228 S.W.2d 762, 770–771[3–5], was the first which definitely asserted that the right to adopt and amend a constitutional charter "carries with it the right to so amend as to effect lawful annexation", and that specific legislative authority to extend the city's limits was unnecessary although such statutory authority did exist.

It quotes a statement from the Stegmiller case to the effect that any act on the part of Kansas City which contracts or expands its territorial jurisdiction is an amendment of its charter, and that the ordinance in question extending the city limits was an amendment of the charter within the purview of then § 16 of Art. 9 of the Constitution. 228 S.W.2d at 769. The Taylor case further at that point also quotes from the Stegmiller case to the effect that insofar as the action of Kansas City alone is concerned there is a plain constitutional grant of the power to extend its limits and a definite mode pointed out. These unwarranted statements have led to the difficulty in the McConnell case as well as the instant case. If unexplained and not considered in context, the statements are misleading. The Constitution does provide and point out the manner of amending a charter; however, statements from these early cases have been misinterpreted as holding that § 20 bestows the right of annexation when all it does is to provide the means by which annexation is made effective when the description of the city limits is made a part of the charter.

There was at all times statutory authority for annexation by charter cities. As amended and now existing it is § 82.090. As pointed out previously, the Stegmiller case is relied on for the proposition that the right of a charter city to annex is a direct grant by the Constitution. In fact the case recognizes that the general assembly has the right to regulate annexations and that amendments to the charter must be in harmony with and subject to the laws of the state. In this regard the Stegmiller case says, 151 Mo. at 200, 52 S.W. at 725: "The only limitation of the power of amendment is that it must be adopted by three-fifths of the qualified voters at a general or special election after the due publication of the proposal *and that the charter as amended shall always be in harmony with and subject to the laws of the State.*" Italics added. Again at page 205, 52 S.W. at page 726, the Stegmiller

opinion states: "While, therefore, Kansas City had the right, under section 16, article 9, of the constitution to frame its own charter within the domain of purely municipal government, subject to and in harmony with the constitution and laws of the state, it was entirely competent and clearly within the power of the general assembly to provide for its relation to other contiguous municipalities of the state, and it could only absorb these outlying cities, towns, or villages by the consent of the state which had created them."

We find no fault with the result reached in the cases other than McConnell. The statements in the prior decisions to the effect that § 20 of Art. 6 constituted a grant of the power of annexation were not necessary to the decisions and should be regarded as surplusage. In my opinion the holding in the McConnell case that the Sawyers Act was not applicable is erroneous. It is no authority for holding that the Sawyers Act is not mandatory in the present case. It does not appear necessary, however, to deal further with the McConnell case in this litigation.

The right to amend a charter under § 20 of Art. 6 must be construed in connection with § 19 which grants the home rule powers. An amendment must be germane to and cannot rise above the authority to adopt a charter for the city's own government consistent with and subject to the Constitution and laws of the State. When a home rule charter city enacts an ordinance or endeavors to amend its charter so as to adopt a measure not of purely municipal concern, it must derive such power from some statute which authorizes the adoption by the city of such a measure. Bowler v. Nagel, 228 Mich. 434, 200 N.W. 258, 259[1], 37 A.L.R. 1154. The incongruity of this constitutional provision granting authority to annex is illustrated by this statement in State ex rel. Snell v. Warner, 4 Wash. 773, 31 P. 25, 26, 17 L.R.A. 263: "To permit the city by its own act to annex outside territory, without fur-

ther legislation on the subject than is contained in the constitution, would be to extend the language of that instrument, and make it read, in effect, that a corporation might frame a charter for its own government and the government of such additional territory as it might choose to include within its limits. Therefore the provisions of the constitution with regard to the amendment of such charters could have no force without the assistance of legislation."

Unnecessary and unguarded statements, primarily in Kansas City v. Stegmiller, 151 Mo. 189, 52 S.W. 723, appear to be relied on in subsequent cases up to and including the principal opinion in this case to support the proposition that a charter city may "by virtue of § 20 alone, annex unincorporated territory" and that "every annexation by a charter city is a charter amendment." To say that there are no restrictions imposed on charter cities as to the scope and kind of amendments is patently unsound. The words used do not so state nor do they permit any such construction.

In the case at bar, the appellant City in its supplemental brief and oral argument clearly presented the issue of whether the phrase "a charter for its own government, consistent with and subject to the Constitution and laws of the state" confers on a charter city the right to annex unincorporated territory in contravention of general laws regulating annexation. A cursory examination of §§ 19 and 20 and a moment's reflection on the power of the legislature to determine matters of state policy would seem to be sufficient to reveal that the state has not delegated this governmental function to charter cities except by statute. Certainly the City of Hannibal is entitled to be told what clause, phrase or word in these constitutional sections confers upon a charter city, either expressly or by implication, the power and authority to annex additional territory. Neither the principal opinion nor any of the previous cases have done so.

So far we have undertaken to show that §§ 19 and 20, taken singly or in combination, do not constitute a grant of power expressly or impliedly authorizing a charter city to annex adjoining territory, and that annexation is a governmental function which the general assembly can and has regulated. Next we must be concerned with that portion of the principal opinion which holds that "in so far as § 82.090 purports to permit a charter city to annex territory by ordinance alone it is unconstitutional" and the further holding that the city limits of Hannibal are "defined" in its charter. The opinion appears to hold that all charter cities must "define" their city limits in their charter which, if so, would bring all annexations by constitutional charter cities under the rule, applicable so far solely to Kansas City, that where the boundaries are set out in the charter, the charter must be amended before the annexation becomes effective. If we are correct in the proposition that the general assembly has the legislative power to regulate annexations by constitutional charter cities as well as others, the question remaining is whether Hannibal has "defined" its city limits in its charter.

Section 82.090 contemplates that any charter city may extend its limits by ordinance except where the limits are "defined" in the charter of the city, in which case the annexation ordinance shall be in the form of a proposed amendment to the charter which must be approved by a majority of the voters before it is effective. The predecessor of § 82.090 was amended as a result of the decision in City of Westport v. Kansas City in which counsel for Kansas City argued that it should not be necessary to amend the charter because the description of the city limits had been included in the charter unnecessarily and should be disregarded. In answer to this contention, the court stated, 15 S.W. 69: "In looking through this adopted charter, we find a vast number of sections which might have been omitted without affecting the charter taken as a whole. But it does not follow that

they are not parts thereof, because they could have been omitted. So, too, the freeholders, in framing the proposed charter, and *the voters, in adopting it, did, by the second section thereof, fix and define the territorial limits of the municipality,* and that section is as much a part of the charter as any other section therein contained. This section, defining the limits of Kansas City, is made a part of the charter, and the question whether it might or might not have been omitted is foreign to the present inquiry." Italics added. It will be noted that the court used the word "define" in describing how the boundaries were made a part of the Kansas City charter.

After the Westport decision the statute, then § 1880, RSMo 1889, was amended (Laws 1895, p. 54) by adding a proviso in substantially the same language as the last sentence of § 82.090, RSMo 1959, V.A. M.S. Omitting the nonessential middle portion relating principally to the annexation of other cities, the present section reads:

"Any constitutional charter city, may at any time extend its limits by ordinance, specifying with accuracy the new lines to which it is proposed to extend its limits. * * * In all cases where the corporate limits are *defined in the charter of the city,* the ordinance extending the limits shall be in the form of a proposed amendment to the charter of the city, and before the amendment shall be of any force or effect, it shall be submitted to and accepted by a majority of the qualified voters of the city voting at a general or special election, in all respects and in compliance with all the requirements provided for amendments to the charter of the city." Italics added. The proviso and present last sentence of the statute follows the language of the court in the Westport case with respect to the corporate limits being "defined" in the charter. Obviously the statute contemplates that there would be other cases where the boundaries would not be defined in the city charter and in such cases the first sentence of the section requires that the city limits must be specified with accuracy in the annexation ordinance.

The word "define" has been judicially defined, but the decisions add nothing to the clarity of the definition in Webster's Third New International Dictionary which, as here pertinent, is: "to fix, decide, or prescribe, clearly and with authority * * to mark the limits of: determine with precision or exhibit clearly the boundaries of".

In the face of § 82.090 and the Westport decision, it cannot reasonably be said that the Hannibal charter fixes, marks the limits of, or determines clearly the boundaries of the City. On the contrary, the charter states that the City of Hannibal shall continue as a municipal body "within the corporate limits as now established or as hereafter established in the manner provided by law" (§ 1.01), and that adjoining land "may be annexed to the city upon passage of an ordinance by the City Council to that effect and duly enacted pursuant to the applicable laws of the State of Missouri in force at the time of such annexation" (§ 1.06). The principal opinion refuses to give to the word "define" its usual and ordinary meaning and further does violence to the legislative intent clearly expressed in § 82.090.

The physical condition of the Hannibal charter after this annexation is completed, if done by charter amendment as the principal opinion requires, will demonstrate the fallacy of the holding that the boundaries of the City are presently "defined" in the charter. The description of Hannibal's boundaries attached to plaintiff's petition takes up thirteen pages of the transcript. According to the principal opinion all this will have to be put in the charter in lieu of the present provisions. In addition to the City's legal right to define the limits by ordinance rather than freezing them in the charter, there are practical reasons why a city should be permitted to define its limits by ordinance. The expense of an election is avoided where the limits can be extended by ordinance; if there is a strong feeling

in the City against the annexation, a referendum can be had. Also corrections can be made more conveniently and economically by ordinance. See General Installation Company v. University City, Mo., 379 S.W. 2d 601, 604[5, 6].

The holdings of the principal opinion regarding §§ 71.015 and 82.090 are clearly contrary to basic rules of construction. It fails to give effect to the plain meaning of the words used in the statutes and produces inconsistencies and absurdities in their meaning which should never be attributed to the enactment of a legislature unless there is no rational means of escaping it. State ex rel. Heimberger v. Board of Curators of University of Missouri, 268 Mo. 598, 188 S.W. 128, 135[15]. Furthermore, the rule is well settled that the courts will not hold a statute unconstitutional unless it contravenes the organic law in such a manner as to leave no doubt that it is unconstitutional. State ex rel. Hughes v. Southwestern Bell Telephone Co., 352 Mo. 715, 179 S.W.2d 77, 80–81[4]. The contrary approach appears to have been used in this case. Moreover, it is not the function of the courts to deal with the policy, wisdom or justice of constitutional or statutory provisions. State ex rel. Heimberger v. Board of Curators of University of Missouri, 268 Mo. 598, 188 S.W. 128, 131[8]. The general assembly is much better equipped than this court to hold hearings and make investigations to determine in what instances annexations should be approved by the voters.

I would hold the Sawyers Act, § 71.015, to be mandatory in annexation proceedings by constitutional charter cities just as it has been held in annexations by special charter cities and others. See Julian v. Mayor, Councilmen and Citizens of the City of Liberty, Mo., 391 S.W.2d 864; City of Olivette v. Graeler, Mo., 338 S.W. 2d 827; and City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4. I would hold that § 82.090 is a valid enactment which au-

thorized the City of Hannibal to annex by ordinance as it has been doing and now proposes to do again. Accordingly I would reverse and remand the case.

For these reasons I dissent.